Genevieve **DEREWECKI**, Administratrix of the Estate of Joseph W. Derewecki, Deceased, Plaintiff,

v.

The **PENNSYLVANIA RAILROAD COMPANY**, Defendant.

Civ. A. No. 63-15.

United States District Court
W. D. Pennsylvania.

Oct. 28, 1964.

Louis C. Glasso, Pittsburgh, Pa., for plaintiff.

Hubert I. Teitelbaum, Pittsburgh, Pa., for defendant.

ROSENBERG, District Judge.

This action is here by virtue of the Federal Employers' Liability Act, 45 U. S.C. § 51 et sequi.

The Pennsylvania Railroad Company, defendant, has presented a "Motion for Judgment in Accordance with Motion for Directed Verdict or New Trial", after a jury returned two verdicts in favor of the administratrix of the Estate of a deceased plaintiff, the first in the sum of $30,000 for damages during the lifetime of the deceased, and the second in the sum of $50,000 for the benefit of the wife and children of the deceased and for their benefit. The decedent had originally commenced this action as plaintiff, but died during its pendency. After that the deceased's wife was appointed as the administratrix of his estate and the pleadings were amended to substitute such administratrix as the plaintiff.

The circumstances in this case are unusual in several respects. The plaintiff had no live witnesses to support her case to establish negligence on the part of the defendant. For that purpose the plaintiff introduced into evidence two depositions taken at two different times at the instance of the defendant as vehicles for discovery under Federal Rule of Civil Procedure 26.

The first of these depositions was taken in the office of counsel for the defendant on April 12, 1963. While so being deposed, the plaintiff suffered an attack and was taken to the Mercy Hospital. On the following July 26th, counsel for both parties entered into the following stipulation:

"It is stipulated between the parties that the deposition taken of the plaintiff above named on April 12, 1963, and transcribed, which deposition was adjourned to a future date, be and is hereby considered to be the final deposition of plaintiff and that defendant is satisfied that no further deposition is required of the plaintiff and same is to be treated as complete."

The case was then pretried on December 16th following. At the pre-trial conference, the defendant's counsel asked

for a medical examination of the plaintiff and to this the plaintiff's counsel agreed. Still later, the defendant's counsel requested of the plaintiff's counsel the right to take further deposition of the plaintiff at his home in Shadyside, Ohio. The plaintiff's counsel agreed to that.

The second deposition was then undertaken on January 8th, 1964, and proceeded for some little period of time during the course of which, the plaintiff suffered another attack and died. One of the reasons for the defendant's motion for a directed verdict or a new trial is based upon the inability of the defendant to complete this second deposition. The defendant has also assign'ed other reasons in support of its motion and these will be discussed.

At the trial of the action before a jury, the plaintiff first offered and it was admitted into evidence, over the objection of the defendant, the deposition of the deceased plaintiff taken on April 12, 1963. As to the liability phase, the deceased plaintiff had testified in this deposition that at approximately between 7:30 and 8:00 o'clock A.M. on March 14, 1961, he and another employee named Welch, a groundman on the derrick, were engaged in pulling back a wheel truck assembly from underneath a car. Both men were working by hand. The car had been lifted by a derrick and jacked up underneath. The plaintiff and Welch were working, the deposition states, when Welch let go of his side causing the truck assembly to roll back down a grade or a gully or depression in the track. This caught the deceased plaintiff "with all of this excess weight * * * and jerked [him] with extreme pain going up [his] left arm and shoulder and into [his] back." This resulted in great pain in the upper part of his back, which radiated down his back and up his side. As the result of this, the deceased plaintiff was unable to work and laid around until he was told to go home by his foreman. None of his fellow employees, it appeared, were interested in his condition or offered him any aid.

The second deposition taken on January 8, 1964, was then offered into evidence by the plaintiff over the objection of the defendant. This too was admitted. In this deposition there was a more detailed discussion of the occurrence. Although not indicated in the transcript of testimony, the deposition itself shows that the deposition was started at 2:00 o'clock P.M. and it shows that it was concluded at 2:15 P.M. due to the illness of the witness.

The defendant complained at the trial of the case, and continues to complain after the trial of the case, that it was deprived of its right to cross-examine the deceased plaintiff as a deposition witness, and that therefore, the depositions are not admissible in evidence. While the defendant's contentions may have some merit insofar as the second deposition is concerned as taken on January 8, 1964, it is my opinion that it has no merit insofar as the first deposition is concerned.

Federal Rule of Civil Procedure 26 provides for the taking of depositions, their scope of examination and cross-examination, and for their use. Subparagraph (d) provides that at the trial or upon a hearing of a motion or an interlocutory proceeding, the deposition of a witness, whether or not a party, so far as admissible under the rules of evidence may be used by any party for any purpose if the court finds, inter alia, that the witness is dead.

When counsel for the parties on July 26, 1963, entered their stipulation to the effect that the first deposition, which was adjourned to a future date, "be and is hereby considered to be the final deposition of plaintiff and that defendant is satisfied that no further deposition is required of the plaintiff and same is to be treated as complete", the Court would in accordance with the stipulation of counsel consider this as final and complete for such uses as Rule 26

would authorize and permit. Accordingly, the defendant's objection to the admission into evidence of the first deposition because the defendant had no right or opportunity to complete its cross-examination of the witness and because, further, the witness had been deposed for discovery only, has no merit. It is obvious that the defendant had considered the first deposition complete and final. It was, therefore, admissible in evidence at the trial of the case. Rosenthal v. Peoples Cab Co., D.C., 26 F.R.D. 116; Hart v. Friedman, D.C., 29 F.R.D. 2.

■ As for the admission in evidence of the second deposition, during the taking of which the deceased plaintiff suddenly died, the defendant's objection that it had no opportunity of cross-examining or completing the cross-examination of the witness is not warranted. First, the deposition was not taken by the plaintiff or in his behalf, and there was no direct evidence offered which was subject to cross-examination. Second, the defendant offers nothing persuasive as to the content or the substance of the further examination of which it may have been deprived. Accordingly, whatever evidence was adduced by the defendant from the decedent must be considered as the defendant's evidence.

Was the admission into evidence of the second deposition prejudicial to the defendant or would the exclusion from evidence of such deposition have been prejudicial to the plaintiff?

■ It might have been that the witness, even under oath, had been more inclined to color the circumstances because the deposition was taken in his home and in the form of an inquiry by the defendant's counsel, and it might have been that the witness was less appreciative of the solemnity of the testimony than he would have been in a courtroom and before a jury. However, there can be no inference from such surmises. While there was some conflict in the testimony of the decedent

in his depositions and conflict between the depositions and the live witnesses at the trial of the case, this was a matter which the law required must be presented to the jury for determination, since it was not of such an obvious character as to require that the trial judge make a determination of it as a matter of law. Cervin v. W. T. Grant Co., C.A.5, 1938, 100 F.2d 153.

■ In any event the questions pertinent to the decedent were in the best light as it favored the defendant, for these were the defendant's questions. That they were taken by the defendant for discovery use will not vitiate their use as well for trial purposes as provided in Federal Rule of Civil Procedure 26. It will be assumed that the defendant was familiar with this Rule since it invoked the procurement of discovery by its authority. It will be presumed, also, that when the defendant invoked the discovery procedure it also contemplated and agreed to the use of those depositions at the trial of the case in the event of the death of the deponent. The defendant will not now be permitted to contradict this.

So far we have discussed the aspect of the defendant's liability and the evidence as offered by the plaintiff in support thereof as is contained in the two depositions. After the decedent returned home during the initial attack, which occurred at work on March 14, 1961, he was committed that afternoon to the hospital by his personal physician; and in the days which followed it was ascertained that the deceased plaintiff had suffered a posterior myocardial infarction. During the following months, the deceased recuperated from this attack and was allowed by his personal physician to return to work on October 12, 1961. He continued to work until December 26th of that year when he suffered another myocardial infarction, this time in the anterior portion of the heart. This was complicated by congest-

ed heart failure. He remained incapacitated until the time of his death.

■ The defendant objects also to the introduction of the depositions because it argues that it had no opportunity to cross examine the deceased on the element of contributory negligence. This, however, is not supported by the record as a whole; for although the defendant in its answer to the complaint originally raised the affirmative defense of contributory negligence, nowhere else did it set forth this theory as the pleadings developed.

In the defendant's pre-trial narrative statement filed September 27, 1963, there is no assertion that the defendant intended to rely upon such a theory. In the pre-trial stipulation filed on December 5, 1963, by the parties, the contributory negligence theory was omitted. At the pre-trial conference on December 16, 1963, that theory was not advanced. In the motion for directed verdict at the close of all the evidence, eight points were set forth, but none of these related to contributory negligence. The defendant's theory throughout the trial of the case was based upon two defenses: one, no such accident or incident occurred as was asserted by the decedent; and two, the decedent's heart condition had been developing for years and had finally brought about an occlusion. The present "Motion for Judgment in Accordance with the Motion for Directed Verdict or New Trial" as it relates to contributory negligence, appears to be a product of the defendant's hindsight and supports no persuasion at this time.

The defendant argues that the jury should have been instructed, in any event, on contributory negligence on the part of the decedent. It is obvious that the defendant itself did not rely upon the defense of contributory negligence, but depended upon its theory or defense to the jury that no such accident or incident as related by the decedent occurred on the morning of March 14, 1961, and that it should not have been held responsible for the heart occlusion on that morning.

This is strengthened by the evidence which the defendant produced at the trial of this case. It produced the witness Welch who worked with the deceased that morning. He testified that no truck assembly was being pulled out from underneath the car on that date, but that rather a door was being attached to the side of the boxcar; that a crane lifted and held the door in place; that no effort was required on the part of anyone; that the deceased that morning complained of pains when he came to work and sat around doing nothing while others did the work; that he continued to sit around until he left for home late in the morning. Several other witnesses, fellow employees of the deceased, were called to corroborate Welch. This was the defense upon which the defendant depended and it was obvious that it had high expectations from what it believed was the quality and character of evidence as submitted by these employees. It was this upon which the defendant relied in part in submitting a motion for a directed verdict.

The defendant presented medical experts who testified that an arteriosclerotic condition, such as that as the decedent suffered, is progressive and would eventually bring on an occlusion; that strains and ordinarily accustomed physical exertions do not in themselves produce occlusions; and, that more frequently such occlusions occur during periods of rest as in the early hours of morning when the physical body has the least heart action and requires the least amount of blood for body maintenance.

■ The defendant was convinced of its stand and believed that it should be exonerated either from negligence or responsibility for the heart attack of the deceased. Perhaps that should have been so, but it was not for me as trial judge to so rule; and even if I had believed that the defendant's theory was the more basic I could not have interfered with

the jury's right to determine these, since these were questions of fact for the jury's consideration. Tompkins v. Erie Railroad Company, C.A.2, 1938, 98 F.2d 49.

The defendant also argues that the verdicts are excessive. Perhaps they are. The jury was instructed against granting any awards for any funeral expenses or for any grief or sorrow which would have been occasioned by the husband's and father's death, since these may not properly be included in the measure of damages in a case of this kind. Heffner v. Pennsylvania R. Co., C.A.2, 81 F.2d 28. The jury was instructed on damages and the only exception by the defendant in this regard was to the inclusion in the charge on damages for medical expenses, pain and suffering and loss of earnings. I can see nothing in the argument of the defendant here to support the contention that it now makes. The jury did bring in sizeable verdicts. As to the defendant's complaint that the damages were so excessive as to compel a new trial, I may rephrase only what Judge Kalodner said for our Court of Appeals for the Third Circuit in Dowd v. Webb et al., 337 F.2d 93 (1964), that while the amount might well have been much lower, I cannot say as the trial judge that it is a discretionary right under all of these circumstances for me to grant a new trial on the ground of excessiveness in allowance of damages.

Perhaps if I had it to do, I would have brought in lesser amounts, but that is not the test. The question is not what I would have done, since that was not my function in this case. It may be that the jury was more liberal than I would have been in estimating the probable longevity that the decedent might have had, if the accident or incident which it found occurred had not occurred. All the medical experts testified that the decedent's life was destined to be shorter because of the arterio-sclerotic condition, but none of these either for the plaintiff or the defendant ventured even a guess on the probable number of years he could have lived. Certainly it was not for me to do so. From all the medical experts' evidence, it appears that the arterio-sclerotic condition, from which the deceased suffered prior to March 14, 1961 had the tendency to considerably shorten his life. I, as the trial judge, cannot say what his life span would have been. If the jury was too liberal in its point of view, it was nevertheless a question for the jury's determination. I shall leave it as such.

For all of these reasons the motion of the defendant will be denied.