**WRIGHT ROOT BEER COMPANY OF NEW ORLEANS, Incorporated, Plaintiff-Appellee,**

v.

**DR. PEPPER COMPANY, Defendant-Appellant.**

**No. 26591.**

United States Court of Appeals
Fifth Circuit.

July 30, 1969.

Rehearing Denied Sept. 11, 1969.

Harold R. Ainsworth, New Orleans, La., B. Thomas McElroy, Dallas, Tex., for defendant-appellant; White, McElroy & White, Dallas, Tex., of counsel.

Charles M. Lanier, New Orleans, La., R. Boatner Howell, Jr., Baton Rouge, La., for plaintiff-appellee.

Before WISDOM and DYER, Circuit Judges, and KRENTZMAN, District Judge.

DYER, Circuit Judge:

In a lengthy trial, redolent with acrimonious debates of counsel and lay and lawyer witnesses,[1] the jury found that Dr. Pepper Company had reneged on its agreement to recognize Wright Root Beer as its Dr. Pepper bottler in New Orleans, Louisiana, and assessed Wright's damages at $150,000. From the judgment entered on the verdict Dr. Pepper appeals. We reverse.

Washington Ice-Royal Products, Inc., located in New Orleans, bottled and sold Wright Root Beer and Dr. Pepper, the latter under a written franchise agreement with Dr. Pepper Company. In the spring of 1963 Washington Ice was in financial difficulty. Evans Howell, president of Wright Root Beer Company of Baton Rouge, Louisiana, which bottled and sold Wright Root Beer in that territory, and his brother Boatner, who was counsel for both that company and the plaintiff at trial, purchased Washington Ice on April 4, 1963, through negotiations with Frank Herman, its president.

The following day, April 5, 1963, a meeting was held in New Orleans between the Howells and Kirby, manager of Dr. Pepper's franchise department. Herman and others were also present. The Howells maintained that Kirby promised them a franchise and that he was held out by Dr. Pepper Company with apparent authority to do so. Dr. Pepper contrarily maintained that its manager made no such promise, that the terms and conditions of a franchise agreement were never discussed and that, in any event, Kirby had no real or apparent authority to grant a franchise because this was exclusively the province of the company's franchise committee.

The Howells formed Wright Root Beer Company of New Orleans, Louisiana, and took over the operation of Washington Ice on April 11, 1963. On May 13, 1963, Dr. Pepper Company notified Wright that the New Orleans franchise had been granted to Canada Dry and that Wright could no longer bottle and sell Dr. Pepper in the New Orleans market.

By answers to special interrogatories the jury found that Wright and Dr. Pepper had entered into a contract which was breached by Dr. Pepper with

---

1. Counsel for Wright was a substantial stockholder in the company and one of its principal witnesses.

resulting damages to Wright of $150,-000. Judgment was entered with interest added from the date of judicial demand.

Fourteen specifications of error are urged upon us by Dr. Pepper, two of which we consider vital and to require reversal.

■ First we consider the trial court's instructions concerning the weight to be accorded a deceased witness' deposition.

Frank Herman, the President of Washington Ice, was an important witness whose testimony was crucial to Dr. Pepper's case. His deposition was taken by Dr. Pepper on notice to Wright. Wright's counsel, Boatner Howell, was present and cross-examined Herman, although at the trial Howell complained that he did not extend himself on cross-examination because it was a discovery deposition. Herman's deposition was generally to the effect that the franchise given by Dr. Pepper to Washington Ice could not be transferred; that their franchise would have to be cancelled and then Dr. Pepper would have to decide on subsequent action; that at the April 5, 1967, meeting Kirby said that whoever purchased the business would have to be approved by the Company's franchise committee; that Herman knew that approval of a company had to be accomplished by the franchise committee; and that Kirby had no authority to act for the committee.

Between the time of the deposition and the time of trial Herman died. At the trial Dr. Pepper offered the deposition in evidence.

On several occasions the trial judge instructed the jury that the deposition of Herman was conducted differently than questioning a witness in the courtroom and that the jury could give it less weight and credence than the jury would give the testimony of live witnesses.

Initially the court told the jury:

Depositions are not conducted along the stricter lines of questioning a witness in a courtroom. However, in view of the death of Mr. Herman, who would be a *material witness* to this matter, but due to his death he is unable * * * the Court is going to allow the use of his deposition, ultimately, to be placed in evidence and read to the jury. If the parties desire to, as I assume they are going to desire it, therefore, when the deposition is used, the facts are taken for discovery purposes, the fact the man is now deceased, the fact that it is conducted along less rigid lines than questioning would be conducted in a courtroom should be taken into consideration by you ladies and gentlemen of the jury in applying what weight you want to give to the deposition of Mr. Frank Herman, who is now deceased.

It may be that because of being a *deposition for discovery and not strictly in accordance with the questioning that usually takes place in the courtroom, you may want to give it less weight and less credence than you would if the man were living today and able to personally testify.*[2] (Emphasis supplied.)

Subsequently, when Dr. Pepper objected to the court's instruction concerning the Herman deposition, the court said:

I think it was proper to point out to the jury all of the circumstances that might be attended at the taking of a deposition for discovery purposes, versus a deposition for perpetuation of testimony. *Even with the presence of opposing counsel,* so forth, certainly at a deposition for discovery, it's not unusual that you would not go into an in depth cross-examination that you would, where you are going to perpetuate the testimony. I think the jury was sufficiently charged on the point. I may not have mentioned specifically, I cannot remember, now, that definitely counsel for both parties were

2. Record on Appeal at 251–252.

present. I thought I did mention it, I will mention that.[3] (Emphasis supplied.)

Later, in connection with the Herman deposition and that of Parker, another deceased witness offered by Dr. Pepper, the Court said:

> Even though it is a deposition for discovery and even though the depositions were *not taken under the strict rules of evidence that would be conducted in the courtroom*, in view of the deaths of these two persons, the Court feels that at least they would be further information for the jury in trying to arrive at a decision in this case. However, due to the fact that they are *not conducted normally with the rights of all and full and complete cross-examination*, you have the right to give, therefore, what weight you want to give to these depositions. *But that doesn't mean you should give them any weight.* What weight you give them is up to you members of the jury.[4] (Emphasis supplied.)

Finally, the court again re-emphasized its prior rulings when Dr. Pepper offered the deceased witness Parker's deposition:

> As explained to the jury yesterday, these witnesses' depositions are being read because of the fact these parties are now deceased. These depositions were taken originally for discovery purposes, not to perpetuate testimony for use at the trial. However, because of the untimely deaths, the Court rules these depositions should be read to the jury and can be considered by you as evidence. The only thing that you will give is what weight you think should be given to the testimony because of the *unavailability of the witnesses for a full and complete cross-examination by the opposing side.*[5] (Emphasis supplied.)

The instructions given to the jury by the trial court were patently erroneous.

Under Rule 26(d) (3), F.R.Civ.P., as a matter of right, a party may introduce the deposition of a deceased witness with no strings attached. The trial court has no discretion to conditionally admit such a deposition. Here the court, acknowledging that Herman was a material witness, nevertheless told the jury that his testimony was taken "not strictly in accordance with the questioning that usually takes place in the courtroom," and that even though opposing counsel was present the questioning was "not taken under the strict rules of evidence," and "not conducted normally with the rights of all and full and complete cross-examination." The court then concluded: "But that doesn't mean you should give them [the depositions] any weight;" the weight to be given them was up to the jury.

Opposing counsel was admittedly present at the depositions and did cross-examine the deponents. Whether the cross was extended or limited was left to counsel's judgment, and to the strategy that is inherent in a trial lawyer's decision. The unexpected is to be expected at the trial of cases, including the necessity for using depositions when the deponent has met an untimely death before trial. Wright's counsel did not, indeed could not, contend that his cross was limited in any way except by his own choice. *Cf.* Derewecki v. Pennsylvania R. R., 3 Cir. 1965, 353 F.2d 436. Nor did he present anything to the trial court that would have suggested the slightest indication of prejudice because he did not cross-examine in depth as he had the right to do. Furthermore, he made no proffer of any evidentiary matter that he might have elicited on cross that would have served to impeach or vary the testimony of Herman.

If the interrogation of Herman on his deposition was not in accordance with the strict rules of evidence, or not conducted "normally" to protect the rights of all parties, with full and complete

---

3. Record on Appeal at 299–300.

4. Record on Appeal at 766.

5. Record on Appeal at 785–786.

cross unavailable, then the deposition should not have been admitted for any purpose. But the record simply reveals no such circumstances. The deposition was duly noticed and taken without objection either at the time that the deponent testified or at the time of trial. Subject to proper objections concerning relevancy, materiality and the form of questions propounded (none of which were made) the Herman deposition was fully admissible. We must presume that the trial court's instructions concerning the deposition were followed by the jury. We cannot say that they did not play an important part in arriving at the verdict. The instructions were prejudicial and erroneous.

 Dr. Pepper also assigns as error the limitation of the trial court on the use of the depositions of Evans and Boatner Howell for impeachment purposes. The depositions of the Howells were taken in February, 1964. The trial was held in March, 1968. That there were apparent material inconsistencies in their trial testimony vis-a-vis their depositions is clear. What is unclear is the court's ruling concerning the manner in which the depositions could be used for impeachment. Counsel for Dr. Pepper attempted in the usual way to interrogate the Howells on the stand, and when a response was inconsistent with an answer in the deposition counsel would then seek to confront the witness with his deposition testimony. The trial court, however, apparently required Dr. Pepper's counsel to permit the Howells to hold a copy of their depositions in their hands during cross examination and then further frustrated the impeachment of the witnesses through the use of prior, inconsistent statements by instructing defendant's counsel to read the deposition to the witness by page and line for each series of questions and answers to which any reference was made. This procedure, coupled with the witness' unresponsive answers containing unfounded charges of irregularities and unfairness in the taking of the depositions, with a rejoinder from the court

that counsel had the burden to rebut such unfounded charges, effectively destroyed all attempts of impeachment.

While we recognize and uphold the right of the trial court to exercise a wide discretion in the procedural conduct of a trial, where, as here, credibility choices play such a dominant role in the issue to be resolved, counsel should have been permitted to first question the witness and then confront him with a prior inconsistent answer in the witness' deposition. Inconsistencies would rarely occur if the witness were permitted to read his deposition before answering. Our adversary system was designed to test the truth of evidence given at a trial. The impingement on this basic concept was error.

Since we must reverse the case because of error in limitation on the use of depositions for impeachment purposes, and because of error concerning the weight to be accorded a deceased witness' deposition, we do not reach the other errors asserted with reference to substantive issues which the jury might well have considered in a different light but for the District Court's rulings on the deposition evidence.

Upon remand for a new trial, however, some of the same legal issues that are raised on appeal will again be presented. We think that efficiency in the administration of justice demands that we consider them. Miller v. International Paper Co., 5 Cir. 1969, 408 F.2d 283, 288–289.

 Dr. Pepper urges that, assuming arguendo a contract was entered into, the dismissal of a suit by Wright on May 13, 1964, against Canada Dry, W. L. Pickens and Dr. Pepper is res judicata and bars this suit.

After Dr. Pepper declined to grant Wright a franchise Dr. Pepper contracted with Canada Dry and its president Pickens, to bottle and sell Dr. Pepper in the New Orleans market. Wright thereafter sued Canada Dry, Pickens and Dr. Pepper in a state court alleging conversion of Wright's Dr. Pepper bottles and

loss of shelf space in the trade area by replacement of Canada Dry's product. Wright compromised its claim against Canada Dry and Pickens. After the dismissal as to them Dr. Pepper removed the suit to federal court, and its unopposed motion to dismiss was granted pursuant to Louisiana Civil Code Article 2203 on the ground that the discharge of one tort feasor without reservation released all joint tort feasors.

We agree with the District Court that the doctrine of res judicata is not applicable to the instant case. While the language in the two complaints bear some similarity because of the pleading requirements of Louisiana law, the gist of the claim is for the reasonable value of the cases and shelves allegedly stolen from Wright by the three defendants in that suit. The doctrine of res judicata is *stricti juris* in Louisiana. International Paper Co. v. Maddox, 5 Cir. 1953, 203 F.2d 88. As we there said:

> The thing demanded must be the same; the demand must be founded on the same cause of action; the demand must be between the same parties, and formed by them against each other in the same quality. * * * It is *stricti juris,* and any doubt as to the identity of the two claims must be resolved in favor of the plaintiff. *Id.* at 90 (citations omitted).

We are furthermore unimpressed with Dr. Pepper's novel argument that even though res judicata is not applicable the mere settlement of the Canada Dry suit fully mitigated the loss of Wright without proof of the financial value of the settlement. No authority to support this contention has been called to our attention and we have found none. Dr. Pepper was given the opportunity to adduce proof for the purpose of mitigating damages but was unsuccessful in doing so.

■ We find meritless Dr. Pepper's assertion that Wright has no standing to maintain the suit because it has assigned its rights against Dr. Pepper to third parties. Absent some notice to Dr. Pepper it can be liable, if at all, to no one but Wright. Louisiana Civil Code, art. 2643; Mayo v. Pioneer Bank & Trust Co., 5 Cir. 1959, 270 F.2d 823. Moreover, it appears that the letter relating the fact that assignments had been made was admitted for a limited purpose not relevant to the use here attempted to be made.

■ Dr. Pepper next complains that any interest due on the judgment should not be calculated from the date of judicial demand but only from the entry of judgment. This argument is foreclosed by Louisiana Civil Code Article 1932 which provides that damages are due from the time of the breach of a contract. In Caracci v. Brother International Sewing Machine Corp., 5 Cir. 1965, 341 F.2d 377, we affirmed a judgment awarding interest from the date of judicial demand. See also Barrow v. Reab, 1850, 50 U.S. (9 How.) 365, 13 L. Ed. 177; Miller v. Housing Authority, 1966, 249 La. 623, 190 So.2d 75; Pothier v. Barber Laboratories, Inc., 1955, 227 La. 357, 79 So.2d 481; Freeman v. Department of Highways, La.App.1967, 197 So.2d 188, aff'd, 1968, 253 La. 105, 217 So.2d 166; Levy v. Southern Bell Tel. & Tel. Co., La.App.1965, 172 So.2d 371.

■ We need not belabor the final legal issue postulated by Dr. Pepper. It complains that a rebuttal witness was permitted to testify for Wright, although not named at pretrial, and that Dr. Pepper was not permitted to offer rejoinder testimony. No objection was made when the witness was tendered or at the conclusion of his testimony. No proffer of surrebuttal was made. Indeed the pretrial order provided that the disclosure of the names of rebuttal witnesses was not required. In the circumstances it was within the discretion of the trial court. Stroud v. B-W Acceptance Corp., 10 Cir. 1967, 372 F.2d 185. There was no abuse of discretion shown here.

Because of the erroneous rulings pertaining to the depositions, the judgment is reversed and the cause is remanded for further proceedings not inconsistent with this opinion.

Reversed and remanded.