521 A.2d 332

**Westley SHIVES, et al.**

v.

**William K. FURST.**

**No. 827, Sept. Term, 1986.**

Court of Special Appeals of Maryland.

Feb. 13, 1987.

Certiorari Denied May 21, 1987.

Dean E. Swartz (Swartz & Reed, on the brief), Washington, D.C., for appellants.

William A. Ehrmantraut (John T. Hull and Donahue, Ehrmantraut & Montedonico, Chartered, on the brief), Rockville, for appellee.

Argued before MOYLAN, BISHOP and WENNER, JJ.

BISHOP, Judge.

Appellants, Westley Shives and the Estate of Calvin and Iris Shives,[1] brought a medical negligence action against appellee Dr. William K. Furst in the Circuit Court for Prince George's County. During the jury trial, the court

---

1. Westley Shives is the minor son of Iris and Calvin Shives, both are deceased. Richard Cornell, as guardian and next friend, brought the action on behalf of the minor child, Westley Shives and also on behalf of the Estate of Iris and Calvin Shives, as their personal representative.

refused to admit into evidence the deposition testimony of one of appellants' expert medical witnesses, Dr. Adolph L. Sahs. The jury returned a verdict in favor of Dr. Furst.

The sole issue that appellants raise is whether the trial court erred when it excluded the deposition testimony of appellants' expert, Dr. Sahs.

## FACTS

In early November, following a heated argument with her mother-in-law, Iris Shives experienced some blurring of vision along with intense pains across the base of her skull and along her neck and shoulders. Because of these unusual symptoms, on November 16th she consulted her physician, Dr. Furst, who diagnosed her condition as fibromyositis, the chronic inflamation of muscle and connective tissue. Dr. Furst prescribed an anti-inflammatory drug, moist heat, and linaments. When Mrs. Shives returned two days later with similar complaints, the doctor administered an injection of demerol for the pain and then cautioned Mrs. Shives that if these problems persisted, more elaborate hospital tests would be necessary.

On November 19, 1981, Mrs. Shives entered Southern Medical Hospital, where various tests were performed, including x-rays and two CT-scans. Expert testimony revealed that the CT-scans suggested the possibility of an aneurysm in Mrs. Shives' brain. An aneurysm is a blood-filled dilation of an artery, resulting from disease of the vessel wall. The failure to diagnose and treat an aneurysm in the brain could prove to be fatal if the involved cerebral blood vessel ruptures. To confirm the existence of such a condition, Dr. Furst ordered a cerebral arteriogram on November 25, 1981. Unfortunately, Mrs. Shives suffered a stroke on November 24th, when the suspected vessel in her brain ruptured. Death swiftly ensued the following day.

Prior to trial, each party, through written interrogatories, identified the expert witnesses on whom they intended to rely during the trial and provided the particulars about

which they expected their experts to testify. Pursuant to Maryland Rule 2–402(e)(1)(B), counsel for appellee then sought to take the testimony of Dr. Adolf Sahs, one of appellants' expert witnesses. At the time of the deposition and before the examination of Dr. Sahs, counsel for both parties addressed the purpose of the deposition. Although appellee's notice of deposition indicated that the purpose of the deposition was for "discovery and/or evidence at the trial," appellee's counsel unsuccessfully attempted to obtain a stipulation that the deposition was only for discovery purposes and would not be introduced as evidence during trial. Appellants' counsel stated that while they presently did not anticipate that appellants would rely on the deposition at trial, counsel insisted that appellant would reserve the right to introduce the deposition into evidence in the event of Dr. Sahs' unavailability. Appellants' counsel stated:

> At this point in time it is not—there is no intention to use this as evidence at trial. That decision could be made later.... I would think that quite likely in the event that it were determined that Dr. Sahs' videotape deposition would be necessary at trial, it is quite possible that another deposition would be conducted of him. At this point in time we just really haven't decided what evidence will be used at trial. It's a little premature to do that. But I don't think the rules of procedure require that your suggestion be taken as such. The deposition notice indicated that the deposition was being taken for any purpose, including my use of the deposition at trial.

It is clear from the record before us that the parties never reached an agreement on this issue. After declaring forcefully his intention to object to appellants' introduction of the deposition at trial, appellee's counsel simply proceeded with the deposition and questioned the witness.

Due to circumstances beyond the control of appellant, Dr. Sahs, who resides in Iowa City, Iowa, became unavailable to testify at the time of trial. In lieu of his live testimony, appellants attempted to substitute the deposition of Dr.

Sahs. When appellee objected to its introduction, the trial court sustained the objection, ruling the deposition was not admissible on alternate grounds. First, the deposition was not preserved for admission at trial; second, a ten day delay in notifying appellee's counsel of Dr. Sahs' unavailability violated the "reasonable requirements" of the Maryland Rules; and finally, the deposition was not in compliance with the rules of evidence. In assessing the propriety of the trial court's exclusion of the deposition, we will address seriatim the merits of each of the trial court's rulings.

I.

*Preservation of Deposition for Trial*

■ Maryland Rule 2–419 subsection (a)(3) enumerates the circumstances under which a party may introduce a deposition in lieu of live testimony:

The deposition of a witness, whether or not a party, may be used by any party for any purpose against any other party who was present or represented at the taking of the deposition or who had due notice thereof, if the court finds:

(A) that the witness is dead; or

(B) that the witness is out of the State, unless it appears that the absence of the witness was procured by the party offering the deposition; or

(C) that the witness is unable to attend or testify because of age, mental incapacity, sickness, infirmity, or imprisonment; or

(D) that the party offering the deposition has been unable to procure the attendance of the witness by subpoena; or

(E) upon motion and reasonable notice, that such exceptional circumstances exist as to make it desirable, in the interest of justice and with due regard to the importance of presenting the testimony of witnesses orally in open court, to allow the deposition to be used.

Md. Rule 2–419(a)(3). A party must satisfy two prerequisites before the rule becomes applicable. First, the deponent must be "unavailable" by reason of such causes as death, sickness, mental incapacity, imprisonment, or absence from the State. Second, the party against whom the deposition is being used must have been present at the deposition or at least have had notice of it. See P. NIEMEYER & L. RICHARDS, MARYLAND RULES COMMENTARY 223 (1984); 3 H. SACHS, JR., POE'S PLEADING AND PRACTICE § 133 (1975). *Cf. Perlin Packing Company v. Price,* 247 Md. 475, 489–90, 231 A.2d 702 (1966); *Quecedo v. DeVries,* 22 Md.App. 58, 61–63, 321 A.2d 785 (1974).

Although the trial court never ruled on the admissibility of the deposition based on whether there was compliance with the requirements of rule 2–419, it did indicate that the deposition was in technical compliance. Instead of resolving this procedural matter solely on the basis of the requirements under the rule, the court excluded the deposition on the basis of "fair play" and on alternate evidentiary grounds. We hold this constituted an error in procedure.

■ Speaking metaphorically, a deposition is like a box that contains certain evidence. The court must make two determinations. The first is a procedural one: whether to admit the box itself into the trial. In making this assessment, the court applies Maryland Rule 2–419. Once the court has decided that the deposition meets these procedural requirements, the court then must address the ancillary evidentiary issues such as whether the contents of the box qualifies as admissible evidence. This step is akin to opening the box, assessing its content and then ruling on its admissibility. Logically speaking, this step must be subsequent to the initial step of determining whether there was technical compliance with the procedural requirements. If there was not technical compliance with the rule, there would be no need to reach the second step.

■ From our review of the facts in this case, there was compliance with both requirements of the rule. First, Dr. Sahs was "unavailable" at the time of trial: the deponent resides in Iowa City, Iowa and unexpected obligations in his medical practice prevented him from testifying personally before the jury. Appellee neither contests the validity of these facts nor asserts the deponent's absence was procured through connivance on the part of appellants. Second, appellee obviously had notice of the deposition, since he was the party who requested it. Of course, appellee was present when Dr. Sahs deposed.

Notwithstanding this technical compliance, the trial court ruled that appellant had not preserved the deposition for admission at trial. The court based this conclusion principally upon equitable considerations. Before starting to question Dr. Sahs at the time of the deposition, counsel for Dr. Furst invited appellants' counsel to conduct a direct examination of the deponent, after which appellee's counsel would then conduct cross-examination of him. When appellants' counsel declined to lead off the questioning, appellee's counsel initiated the examination of Dr. Sahs, but with the following proviso:

> ... this deposition is ... for discovery purposes, and there are questions that will be asked of this witness that are not—that are meant for educational purposes on my part, not being totally familiar with the case; but, secondly, with examining the doctor's breadth of knowledge, which would not be questions asked in a direct or a cross-examination of this witness were he present and testifying at a hearing or a trial of this matter.

Because of the deposition's exploratory nature, the court concluded that it would be unfair to allow appellant to use that deposition in trial, especially in light of appellants' refusal to commence the direct examination.

■ Although some equities weigh in favor of appellee, we hold such considerations are not relevant to the court's decision to admit or exclude Dr. Sahs' deposition. In their

stead, the following factors require us to conclude the court's first ground for excluding the deposition testimony was erroneous. First, Maryland Rules explicitly provide that pretrial depositions are intended to function not only as a discovery mechanism, but also as a method of preserving relevant testimony. For example, Maryland Rule 2–411 provides in pertinent part:

> Any party to an action may cause the testimony of a person, whether or not a party, to be taken by deposition for the purpose of discovery or *for use as evidence in the action or for both purposes.*

(emphasis added). *See also* P. NIEMEYER & L. RICHARDS, MARYLAND RULES COMMENTARY 200 (1984). This broad characterization of the purposes for which parties may use depositions is echoed in Rule 2–419(a)(3), which states depositions "may be used for any purpose." From this clear language, we conclude that Maryland Rules of Procedure do not, as a general rule, require that a deposition simulate a courtroom interrogation before it becomes admissible as evidence. Rather the rules authorize that a party has a right to use that deposition not only for discovery, but also as evidence if he complies with all the technical prerequisites. If the opposing party had notice of the deposition or was present but chose to conduct an investigatory rather than adversarial interrogation, that alone is not reason for exclusion of the deposition testimony at trial.

Second, appellee explicitly acknowledged the broad purposes for which the deposition could be used. In the notice of deposition, counsel for Dr. Furst indicated that they would take the deposition of "Adolph L. Sahs, M.D., ... for the purpose of discovery and/or evidence at the trial." Although appellee's counsel subsequently attempted to restrict the deposition's use at the time that Dr. Sahs deposed, appellant's counsel unequivocally refused to agree to any such evidentiary stipulation. Specifically, he reserved the right to rely on the deposition as evidence at trial, as authorized by the Maryland Rules, if Dr. Sahs became

unavailable for some reason. Without appellants' agreement, that stipulation was ineffective. *See Patapsco Loan Company of Baltimore City v. Hobbs,* 134 Md. 222, 228–29, 106 A. 619 (1919) (upholding stipulation where counsel for parties entered into a written agreement). *See also* AMER. JUR.2D, *Stipulations* § 2 (1974) (stating that "unless it is clear from the record that the parties assented, there is no stipulation").

Finally, a number of courts [2] have refused to distinguish between depositions that may be used only for discovery purposes and those that are also admissible as evidence at trial. Courts have reached this conclusion even when opposing counsel has explicitly characterized the deposition as being solely for discovery purposes and have failed to cross-examine the deponent vigorously or even to question him at all. *Gill v. Westinghouse Electric Corporation,* 714 F.2d 1105, 1107 (11th Cir.1983) (permitting into evidence, over objection based on "exploratory character of pretrial discovery", deposition of expert witness who died prior to trial); *Savoie v. Lafourche Boat Rentals, Inc.,* 627 F.2d 722, 724 (5th Cir.1980) (admitting deposition of unavailable expert witness even though parties had identified the deposition as being only for discovery purposes); *Wright Root Beer Company of New Orleans v. Dr. Pepper Company,* 414 F.2d 887, 890–91 (5th Cir.1969) (holding that even where taken for discovery purposes, "as a matter of right, a party may introduce the deposition of a deceased witness with no strings attached"); *Derewecki v. Pennsylvania Railroad Company,* 36 F.R.D. 195, 198 (W.D.Penn.1964) (holding that deposition was admissible and defendant was not denied its

---

**2.** Since the Maryland Rules on discovery, particularly Rules 2–411 and 2–419, contain the same procedural elements as their counterparts in the Federal Rules of Civil Procedure, we have relied on federal as well as State case law for guidance in determining the parties' rights and obligations. *See* P. NIEMEYER & L. RICHARDS, MARYLAND RULES COMMENTARY 200, 221 (1984) (stating that "[p]rior decisional authority in both the State and federal courts should continue to be of assistance in construing the rights and obligations of the parties").

right to cross-examine deponent, even though deponent died before the completion of deposition), *aff'd,* 353 F.2d 436 (3rd Cir.1965); *Rosenthal v. Peoples Cab Company,* 26 F.R.D. 116, 117 (W.D.Penn.1960) (refusing to exclude a deposition taken only for discovery purposes in which opposing counsel "was present but engaged in no interrogation of witness"). *See also In Re Air Crash Disaster at John F. Kennedy International Airport on June 24, 1975,* 635 F.2d 67, 87–88 (2nd Cir.1980) (arguing it was proper to offer deposition of unavailable witness since party had fulfilled all procedural prerequisites) (Mansfield, J., dissenting).

We are cognizant that extenuating circumstances may arise that may militate against admitting a deposition into evidence. *See Rogers v. Proctor & Gamble Company,* 39 Fed.R.Serv.2d (Callaghan) 76, 77–78 (E.D.Mo.1984) (holding that unavailable researcher's deposition is inadmissible because the research upon which deponent's opinions are based are so preliminary that not only do they lack probative value but also would be misleading to the jury if admitted). Such circumstances, however, do not exist here. Accordingly, we hold that the Shives had the right to use the deposition as evidence in trial so long as the technical prerequisites had been fulfilled and that the opposing party may not unilaterally restrict its use through a purported evidentiary stipulation to which the other party has refused to agree.

II.

## Compliance With Reasonable Requirements of Maryland Rules

As an alternative ground for excluding the deposition, the trial court stated that appellants' delay in notifying appellee of Dr. Sahs' unavailability violated the "reasonable requirements" of Maryland Rules. This conclusion was based on the fact that appellants knew ten days before trial of Dr. Sahs' unavailability, but neglected to inform opposing coun-

sel of this until the day before appellants were to introduce the deposition. We find no merit in the trial court's ruling.

■ Maryland Rule 2–419 nowhere states that a party must give reasonable notice of its intent to submit a written deposition as evidence at trial. Rather, the rule enumerates only two instances in which a party should reasonably expect advance notice of an opposing party's intention to use a deposition at trial. First, if a party desires to introduce a videotape deposition of an expert witness, the deposing party must inform opposing counsel when it files its notice of deposition pursuant to Rule 2–412. Md.Rule 2–419(a)(4). *See also* Md.Rule 2–416(g) (requiring "party intending to offer a videotape ... deposition ... [t]o notify the court and all parties in writing of that intent and of the parts of the deposition to be offered within sufficient time to allow for objection to be made and acted upon before trial"). Second, a party must give "reasonable notice," when making a motion that "exceptional circumstances" dictate the admission of a deposition even though the technical requirements of Rule 2–419 have not been fulfilled. Md.Rule 2–419(a)(3)(E). Outside of these two instances, parties are not entitled to advance notice of the intended use of a deposition at trial. Since the only notice that Rule 2–419(a)(3)(B) requires is notice to take the deposition pursuant to Rule 2–412, it was improper for the trial court to infer additional notice of the use of the deposition at trial.

■ The case law that we presented above clearly supports our interpretation of Rule 2–419 that a party is entitled as a matter of right to use the deposition testimony during trial, if deponent becomes unavailable. Illustrative of this proposition is the case *Wright Root Beer Company of New Orleans v. Dr. Pepper Company,* 414 F.2d 887 (5th Cir.1969), in which the court held not only that a party possesses an unconditional right to introduce into evidence a deposition of an unavailable witness, but that the trial judge has no right to caution the jury that the deposition may be less reliable since opposing party did not conduct a

full and complete cross-examination. *Id.* at 890. In that case, the court stated:

> Under Rule 26(d)(3), F.R.Civ.P., as a matter of right, a party may introduce the deposition of a deceased witness with no strings attached. The trial court has no discretion to conditionally admit such a deposition....
>
> Opposing counsel was admittedly present at the depositions and did cross-examine the deponents. Whether the cross was extended or limited was left to counsel's judgment, and to the strategy that is inherent in a trial lawyer's decision. The unexpected is to be expected at the trial of cases, including the necessity for using depositions when the deponent has met an untimely death before trial. Wright's counsel did not, indeed could not, contend that his cross was limited in any way except his own choice.

*Id. See also Derewecki*, 36 F.R.D. at 198 (stating that "[i]t will be presumed, also, that when the defendant invoked the discovery procedure it also contemplated and agreed to the use of those depositions at trial of the case in the event of [deponent's unavailability]"). *See generally* 8 C. WRIGHT & R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 2143, at 458 (1970); 4A J. MOORE, W. TAGGART & J. WICKER, MOORE'S FEDERAL PRACTICE § 32.05, at 458 (2d ed. 1984); 2 E. DEVITT & C. BLACKMAR, FEDERAL JURY PRACTICE AND INSTRUCTIONS § 73.02, at 617 (1977). Because of appellants' unconditional right to introduce Dr. Sahs' deposition at trial if the deponent became unavailable, we hold that the trial court possessed no authority to impose a reasonable notice requirement upon appellant.

## III.

### *Expert's Testimony Based Upon Facts in Evidence*

As a final ground for excluding the deposition testimony, the trial court ruled that Dr. Sahs did not base his opinions in the deposition on facts that the parties had introduced

into evidence at trial. In that deposition, Dr. Sahs explained the evidence on which he based his medical opinions:

In this particular instance I have referred to a history and hospital record, which came by way of Mr. Swartz. I have several letters from him, each of which is a page and a half long. I have Mr. Swartz' summary of this situation. It consumes three or four typewritten pages. I have had two short telephone calls with Mr. Swartz. And this morning we spent approximately one hour discussing this particular case.

Later in his deposition, Dr. Sahs supplemented his answer by admitting that he based some of his medical opinions on "a verbal report which is not contained in the record, and which was told to me by Mr. Swartz concerning his information as to the exact onset of this condition." Concluding that the contents of these discussions and reports had not been introduced into evidence, the court excluded Dr. Sahs' deposition on evidentiary grounds. We disagree.

■ Maryland Rule 2–419(d) provides that the court applies the rules of evidence as though the deponent was present at the trial. *See* P. NIEMEYER & L. RICHARDS, MARYLAND RULES COMMENTARY 223 (1984). As to the admission of the expert testimony, the witness must base his or her opinion on facts that the parties have adduced into the record. *Greenstein v. Meister*, 279 Md. 275, 285, 368 A.2d 451 (1977); *State, Use of Nitza E. Kalives v. Baltimore Eye, Ear, and Throat Hospital, Inc.*, 177 Md. 517, 525, 10 A.2d 612 (1940). An expert witness, however, need not testify from personal knowledge so long as the opinion is predicated upon facts established in the record. *Consolidated Mechanical Contractors, Inc. v. Ball*, 263 Md. 328, 336–37, 283 A.2d 154 (1971); *John McShain, Inc. v. L'Enfant Plaza Properties, Inc.*, 402 A.2d 1222, 1226 (D.C.App.1979); *Ohio Valley Construction Company v. Dew*, 354 A.2d 518, 523 (D.C.App.1976). Illustrative of this proposition is *Ball*, in which the Court of Appeals recognized that an expert witness may base his opinion "on facts or opinions found by others and upon

whom they rely in their practice." *Ball,* 263 Md. at 328, 283 A.2d 154 (citing with approval *Vinicky v. Midland Mutual Casualty Insurance Company,* 35 Wis.2d 246, 151 N.W.2d 77 (1967)).

■ Although Dr. Sahs mentions oral reports from and discussions with appellants' counsel as a basis for reaching his conclusions, with one exception, no dispute exists that the content of these oral representations have been introduced into evidence. Specifically, appellee contends that "no evidence whatsoever had been offered tending to show the exact nature of the onset of Iris Shives' November 8, 1981 headache, beyond the fact that it occurred after an argument with her mother-in-law."

The medical records that the court admitted into evidence document the factual conclusion that Mrs. Shives experienced a headache of sudden onset:

> [Iris Shives] was enjoying her usual state of excellent health until approximately 2 [two] weeks prior to admission when following an argument with her mother-in-law she noticed pain appearing at the base of the neck radiating across both posterior shoulders and up into the occipital area of the scalp. The pain was rather intense for approximately [one half] hour and was associated with some blurring of vision.

Moreover, this precise fact was established by Dr. Furst's own testimony during direct examination:

> Did you ask Mrs. Shives about the nature of the onset—in other words, was it *an abrupt onset,* did it start slowly in the morning and gradually build up or was it a *sudden* pain in the neck and pain in the head?
>
> A. Yes, she developed pain at the base of the right side of the neck that spread across her shoulders and up the back of the neck to the base of the skull.
>
> Q. Did you ask her specifically whether this was acquired gradually or whether it happened *suddenly?*

A. It came—she had apparently had an argument with her mother-in-law over the phone and she slammed the receiver down and noted the symptoms then.

(emphasis added). Although this Court accords a trial court broad discretion in its factual findings, this evidence renders the trial court's determination on this matter clearly erroneous. Md.Rule 1086.

## IV.

### *Prejudicial Error*

The Court of Appeals has recognized that even if a trial court erroneously admits or excludes evidence, a reviewing court should not disturb the court's ruling when that error was harmless. *E.g., Air Lift, Ltd. v. Board of County Commissioners of Worcester County, Maryland,* 262 Md. 368, 400–01, 278 A.2d 244 (1971); *Wilhelm v. Hadley,* 218 Md. 152, 158, 146 A.2d 22 (1958). In the case *sub judice,* appellee relies on this argument to counteract appellants' contention that exclusion of the deposition was improper. Specifically, Dr. Furst contends that Dr. Sahs' testimony was cumulative, so that any error in excluding it did not prejudice appellants' case and was thus harmless.

Review of this issue is contingent upon examination of the testimony of appellants' other expert witnesses who testified in court. Such testimony, however, was not included in the record extract. This exclusion precludes us from assessing the merits of appellee's contention. Maryland Rule 1028 provides that a failure to comply with this rule may result in dismissal of the case or issue in question. *Spivey v. Harris,* 64 Md.App. 619, 498 A.2d 281 (1985); *Weston International Corporation v. Woodlawn Supermarkets, Inc.,* 44 Md.App. 390, 408 A.2d 781 (1979). Since appellee raises this issue as a response to appellants' contention that the court should have admitted the deposition, we conclude that appellee bore the responsibility of instructing appellants that the omitted testimony should have been included in the record extract. Because of appellee's failure

to do so, we decline to address appellee's arguments that the exclusion of the testimony was not prejudicial.

JUDGMENT REVERSED; CASE REMANDED FOR FURTHER PROCEEDINGS; COSTS TO BE PAID BY APPELLEE.