Paula-Beth Lashley MAHER, Administratrix of the Succession of Morris G. Maher, Plaintiff-Appellant,

v.

The CITY OF NEW ORLEANS et al., Defendants-Appellees.

No. 74–2022.

United States Court of Appeals, Fifth Circuit.

July 31, 1975.

Rehearing and Rehearing En Banc Denied Sept. 26, 1975.

James G. Derbes, New Orleans, La., for Vieux Carré, etc.

John W. Ormond, New Orleans, La., for Crescent Council, etc.

Before GEWIN, DYER and ADAMS *, Circuit Judges.

ADAMS, Circuit Judge:

The issues posed in the case at hand, although they concern a municipal ordinance, nevertheless carry implications of nationwide import.

Plaintiff Maher, on the basis of the Fifth Amendment, assails an ordinance of the City of New Orleans that regulates the preservation and maintenance of buildings in the historic Vieux Carré section of that city,[1] popularly known as the French Quarter. Maher asserts that, on its face, the Vieux Carré Ordinance affronts the due process clause, because it provides no objective criteria to guide the Commission charged with its administration. Maher also contends that the Ordinance, as applied and under the guise of regulation, constitutes a taking of his property without just compensation.[2]

After dealing with prefatory issues of res judicata and collateral estoppel, the district court reached the merits and concluded that the Ordinance was valid.[3] We affirm.

I. Factual Background.

By amendment to the Louisiana Constitution in 1936, authority was vested in the City of New Orleans to create a Commission whose purpose was stated to be:

The preservation of such buildings in the Vieux Carre section of the City

Harold B. Carter, Jr., Walter M. Barnett, New Orleans, La., for plaintiff-appellant.

Blake Arata, City Atty., Caryl H. Vesy, Asst. City Atty., New Orleans, La., for defendants-appellees.

* Of the Third Circuit, sitting by designation.

1. New Orleans, La., Code ch. 65 (Ordinance No. 14,538) (Vieux Carré Ordinance).

2. This appears to be the first reported case in a federal court of appeals determining the constitutionality of such an enactment. *But see* Whitty v. City of New Orleans, Civ. No. 6367 (E.D.La., filed June 30, 1959) appeal dismissed, No. 18,059, 5th Cir., filed March 29, 1960 (denial of demolition permit in Vieux Carré does not offend constitution).

*See also* City of New Orleans v. Dukes, 501 F.2d 706 (5th Cir. 1974), cert. granted 421 U.S. 908, 95 S.Ct. 1556, 43 L.Ed.2d 773 (1975) (constitutionality of pushcart vendor regulation in Vieux Carré).

3. 371 F.Supp. 653 (E.D.La.1974).

of New Orleans as, in the opinion of said Commission, shall be deemed to have architectural and historical value, and which buildings should be preserved for the benefit of the people of the City of New Orleans and the State of Louisiana, and to that end the Commission shall be given such powers and duties as the . . . City of New Orleans shall deem fit and necessary.[4]

To implement the historical preservation plan, the City enacted the Vieux Carré Ordinance. That Ordinance establishes the Vieux Carré Commission and creates a framework of rules governing its powers, duties and operations. Among its other provisions, the Ordinance stipulates that, to perform construction, alteration or demolition work within the geographic boundaries controlled by the legislation, one must procure a permit approved by the Commission.[5]

The present controversy centers on the fate of the Victorian Cottage situated at 818–22 Dumaine Street, adjacent to the Maher residence in the Vieux Carré. Mr. Maher, who owned the property until his recent death,[6] had sought since 1963 to demolish the cottage and to erect a seven-apartment complex on the site.

Following a preliminary approval of Maher's proposal by its Architectural Committee, the Commission on April 16, 1963, disapproved Maher's application to raze the cottage. Almost from the time of the original application, interested individual neighborhood owners, as well as organized groups—including the Vieux Carré Property Owners and Associates, Inc., the French Quarter Residents Association and the Louisiana Council for the Vieux Carré—vigorously opposed the Maher plan to tear down the cottage and to develop the property.[7]

Maher undertook a succession of attempts to secure approval of his plans from the Commission.[8] After several refusals, the Commission was finally prevailed upon to issue the permit. Ultimately, however, construction was prohibited when on August 16, 1966, the City Council for New Orleans, on the basis of an appeal, forbade the grant of a demolition permit.

While the proceedings before the Commission and City Council were pending, Maher instituted suit in the Civil District Court for Orleans Parish, Louisiana. Upon the City Council's final refusal to issue a demolition permit, the litigation in the state court was pressed. The re-

4. La.Const. Art. XIV, Sec. 22A. The same section further charges the Commission with assuring "that the quaint and distinctive character of the Vieux Carre section of the City of New Orleans may not be injuriously affected, . . . that the value to the community of those buildings having architectural and historical worth may not be impaired, and . . that a reasonable degree of control may be exercised over the architecture of [buildings in] said Vieux Carre section . . . .''

5. Vieux Carré Ordinance § 65–8. *Submission of plans for exterior changes to Commission.*

Before the commencement of any work in the erection of any new building or in the alteration or addition to, or painting or repainting or demolishing of any existing building, any portion of which is to front on any public street or alley in the Vieux Carré Section, application by the owner for a permit therefor shall be made to the Vieux Carré Commission, accompanied by the full plans and specifications thereof so far as they relate to the proposed appearance, color, texture of materials and architectural de-

sign of the exterior, including the front, sides, rear and roof of such building, alteration or addition or of any out building, party wall, courtyard, fence or other dependency thereof.

Additional procedures are set forth at §§ 65–9, –10.

6. Morris Maher, original plaintiff in this dispute, died in 1973. Thereafter, his wife was substituted as plaintiff in the district court, in her capacity as administratrix of his estate. For convenience we refer to the plaintiff as Maher.

7. As intervenors, the Vieux Carré Property Owners and Associates, Inc. and the French Quarter Residents Association have filed a brief in this Court jointly with the City of New Orleans. Also participating in the brief as intervenors are the Crescent Council of Civic Associations and Louisiana Landmarks Society.

8. The route that Maher pursued through the Commission and City Council is elaborated by the district court in its opinion. 371 F.Supp. 653 (E.D.La.1974).

lief requested was a declaration that the City Council's action was beyond its statutory authority and, hence, null and void. On February 26, 1968, the Civil District Court granted judgment for Maher.

The Louisiana Court of Appeal reversed, holding tht the City Council's review was proper and, further, that the Ordinance was constitutional—both on its face and as applied to the Maher application.[9] On appeal, the Louisiana Supreme Court affirmed the judgment of the Court of Appeals that the City Council's action lay within its authority, but held that the constitutionality of the Ordinance had not been pleaded in the trial court and consequently could not be considered on appeal.[10]

Subsequently, in 1971, Maher filed the present federal suit under the civil rights act against the City and its agencies, seeking a declaratory judgment that the Ordinance is unconstitutional and an injunction against its enforcement.[11]

The district court held that res judicata and collateral estoppel were not barriers to the litigation, and proceeded to hold the Ordinance constitutional. This appeal followed.

## II. Collateral Estoppel and Res Judicata Do Not Foreclose the Suit.

The initial issue before us is whether, because of the prior state court action, the present suit is barred by principles of res judicata or collateral estoppel.[12] Serving the interest of finality and judicial economy, these doctrines eliminate needless relitigation. Where applicable, res judicata prohibits readjudication of all matters that were, or might have been, litigated respecting the same cause of action between two parties.[13] By comparison, collateral estoppel would preclude renewed controversy over an issue decided in an earlier case even when, in a subsequent case, a different cause of action is presented.[14]

Subsumed in the determination whether principles of finalty govern our disposition of the present case is the underlying inquiry whether the issue is one of state or federal law. Different tests are relevant depending whether the choice of law issue is resolved in favor of federal or state rules. However, in the circumstances here, the outcome is unaffected, since we are persuaded that the suit is not barred under either Louisiana or federal finality rules. Louisiana state

---

**9.** Maher v. City of New Orleans, 222 So.2d 608 (La.App.1969).

**10.** Maher v. City of New Orleans, 256 La. 131, 235 So.2d 402 (1970). Nonetheless, the State Supreme Court observed in dictum that in light of earlier cases where it had held the Vieux Carré Ordinance constitutional, it was "inclined to agree" with the Court of Appeal that the Ordinance on its face was not vulnerable to charges of vagueness or indefiniteness. 235 So.2d at 405, n. 3, citing City of New Orleans v. Levy, 223 La. 14, 69 So.2d 798 (1953); City of New Orleans v. Pergament, 198 La. 852, 5 So.2d 129 (1941); City of New Orleans v. Impastato, 198 La. 206, 3 So.2d 559 (1941).

**11.** Jurisdiction is asserted pursuant to 28 U.S.C. §§ 1331(a), 1343(3) and (4). Maher claims that the Ordinance and its enforcement deprive him of rights under 42 U.S.C. § 1983.

**12.** Maher asserts that the City may not seek a result predicated on finality because the City

has not filed á cross-appeal. However, the traditional rule is that an appellee need not cross-appeal in order to "urge in support of a decree any matter appearing in the record . . .." Morley Construction Co. v. Maryland Casualty Co., 300 U.S. 185, 57 S.Ct. 325, 81 L.Ed. 593 (1937), quoting United States v. American Railway Express Co., 265 U.S. 425, 44 S.Ct. 560, 68 L.Ed. 1087 (1924); SEC v. Fifth Ave. Coach Lines, Inc., 435 F.2d 510 (2d Cir. 1970). See Stern, When to Cross-Appeal or Cross-Petition—Certainty or Confusion?, 87 Harv.L.Rev. 763 (1974).

**13.** Chicot Co. Drainage District v. Baxter State Bank, 308 U.S. 371, 60 S.Ct. 317, 84 L.Ed. 329 (1940); Stoll v. Gottlieb, 305 U.S. 165, 59 S.Ct. 134, 83 L.Ed. 104 (1938).

**14.** Blonder-Tongue Laboratories, Inc. v. University of Illinois Foundation, 402 U.S. 313, 91 S.Ct. 1434, 28 L.Ed.2d 788 (1971); Cromwell v. County of Sac, 94 U.S. (1 Wall.) 351, 24 L.Ed. 195 (1877). See 1B J. Moore, Federal Practice ¶ ¶ 0.401, 0.410, 0.441.

law, stemming from the French Code Civile, takes a more narrow perspective on doctrines of repose than do jurisdictions whose rules derive from the common law.[15] Res judicata in Louisiana is *stricti juris*,[16] forbidding relitigation only on the ultimate judgment rendered, but not extending broadly to matters that "might have been litigated" and not comprehending intermediate facts. Under the Louisiana view, less weight is attached to finality than in common law jurisdictions, and all doubts are resolved in favor of relitigation.[17]

The district court and the parties have proceeded on the assumption that the applicable law regarding finality is that of Louisiana. We have reviewed the cases relied upon by the district court and by the parties in their briefs and, if Louisiana law controls, the conclusion of the district court that this suit may be maintained does not appear to be erroneous.[18]

▮ Where federal jurisdiction is bottomed on state law, as in a diversity matter, state law principles of collateral estoppel govern, under the rationale of Erie Railway Co. v. Tompkins.[19] Unlike a diversity case, however, the suit here presents a federal constitutional question to the federal courts for resolution according to principles of federal law. Despite the fact that questions of state law and issues of local importance undeniably play a core role, this case would seem more aptly characterized as a federal matter. In such event, federal notions of repose must provide the guideposts for analysis.[20]

In Exhibitors Poster Exchange, Inc. v. National Screen Service Corp., this Court applied federal concepts of finality in an antitrust case springing from certain business practices in Louisiana.[21] The Court eschewed rough hewn results, and carefully balanced the interests implicated in finality determinations:

> The doctrines [of collateral estoppel and res judicata] must be used, however, not as clubs but as fine instruments, that protect the litigant's right to a hearing as well as his adversary and the courts from repetitive litigation.[22]

Bearing this admonition in mind, we address the City's claims that the present suit should be dismissed.

▮ The argument is advanced that collateral estoppel controls the disposition of this case. However, the constitutional issues posed now by Maher were expressly excluded from consideration by the Louisiana Supreme Court. It is thus difficult to perceive in what manner the state court proceeding can operate in the case *sub judice* to estop Maher from airing his allegations. We therefore conclude that collateral estoppel does not prohibit this suit.[23]

▮ The contention that res judiciata prevents Maher's presentation to the federal court requires a rather more subtle sifting of the facts and procedures. For res judicata to interdict an action, the rule is that "a judgment 'on the merits' in a prior suit involving the same parties or their privies bars a second suit based on the same cause of action."[24] It

---

**15.** 371 F.Supp. 653 (E.D.La.1974) and cases cited therein. O'Quin, Res Judicata—"Matters Which Might Have Been Pleaded," 2 La.L.Rev. 347 (1940).

**16.** International Paper Co. v. Maddox, 203 F.2d 88 (5th Cir. 1953), cited in Wright Root Beer Co. v. Dr. Pepper Co., 414 F.2d 887 (5th Cir. 1969). *See* O'Quin, supra note 15.

**17.** *Wright Root Beer*, supra note 16; Exhibitors Poster Exch., Inc. v. National Screen Serv. Corp., 421 F.2d 1313 (5th Cir. 1970) (antitrust).

**18.** A review of the doctrine of judicial estoppel also supports the district court result.

**19.** 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). Heiser v. Woodruff, 327 U.S. 726, 66 S.Ct. 853, 90 L.Ed. 970 (1946) (bankruptcy); Wright Root Beer Co. v. Dr. Pepper Co., 414 F.2d 887 (5th Cir. 1969).

**20.** *Heiser*, supra note 19; *Exhibitors Poster*, supra note 17.

**21.** 421 F.2d 1313 (5th Cir. 1970).

**22.** *Id.* at 1316.

**23.** Nevertheless, collateral estoppel may effectively preclude new litigation of isolated factual issues already determined elsewhere.

**24.** Lawlor v. National Screen Service Corp., 349 U.S. 322, 326, 75 S.Ct. 865, 867, 99 L.Ed. 1122 (1955); *Exhibitors Poster*, supra note 17.

is not disputed that the state action in City of New Orleans v. Maher was between parties identical with or privy to the parties here, and the judgment in that case was on the merits and final. The inquiry thus centers on whether the cause of action set forth in the present federal case is identical with that in the prior state case.

■ There is no per se rule that the existence of earlier litigation between the same parties, predicated on a common fact nucleus, establishes res judicata.[25] Rather, in this circuit it has been held,

> The principal test for comparing causes of action is whether or not the primary right and duty, and the delict or wrong are the same in each action.[26]

This test is perhaps easier to formulate than to apply, but in its application we are aided by precedent. In *Exhibitors Poster* this Court tolerated a succession of federal suits presenting related antitrust claims. Although a single business-policy decision dating from a specific period formed the basis for the suit before the Court as well as the earlier litigation, res judicata did not bar the action, the Court held, because the conduct alleged to be illegal continued, giving rise to new damage claims. After paying due heed to the possible collateral estoppel impact of individual issues previously adjudicated, the Court, focusing solely on the definition of "cause of action," held that new causes of action were alleged in the later suit.[27]

■ Since Maher brought the first suit in state court, we must assess the similarity of the two causes of action by reference to the local Louisiana definition of "cause of action." This Court—applying Louisiana law in a franchise dispute—has held no res judicata barrier to a federal suit for breach of contract following a state action for conversion and business injury, both arising out of the same sequence of events.[28] The panel stated that the gists of the actions were different,

> [even though] the language in the two complaints bear some similarity because of the pleading requirements of Louisiana law.[29]

We have examined the causes of action presented in the state and federal cases regarding Maher's zoning battle with the City of New Orleans. The state case was pleaded flatly as a challenge to the findings and procedures of the City Council and its agencies. The Louisiana Supreme Court declared:

> Neither in the petition nor in any other pleading was there any attack on the legality or constitutionality of Article 14, Section 22A of the Louisiana Constitution, or of the ordinance of the City enacted pursuant thereto.[30]

---

25. Wasoff v. American Automobile Ins. Co., 451 F.2d 767 (5th Cir. 1969); DeHart v. Richfield Oil Corp., 395 F.2d 345 (9th Cir. 1968).

26. 451 F.2d at 769, quoting Seaboard Coast Line R. Co. v. Gulf Oil Corp., 409 F.2d 879, 881 (5th Cir. 1969). Baltimore S.S. Co. v. Phillips, 274 U.S. 316, 47 S.Ct. 600, 71 L.Ed. 1069 (1926).

27. *See* DeHart v. Richfield Oil Corp., 395 F.2d 345 (9th Cir. 1968) (the court must examine precisely what was decided between the parties); Falk v. United States, 375 F.2d 561 (6th Cir. 1967). *See* generally 1B J. Moore, Federal Practice ¶ 410[1].

By contrast, in *Wasoff*, supra note 25, a dismissal of a federal suit claiming recovery for hail damage was affirmed. It was held that the cause of action was identical with that pursued in an earlier case based·on the same insurance contract, the same hailstorm and seeking to recover substantially the same damages. The plaintiff, it was stated, "merely asserted a new theory of relief." 451 F.2d at 769.

In Seaboard Coast Line R. Co. v. Gulf Oil Corp., summary judgment was affirmed against the plaintiff on grounds of res judicata, 409 F.2d 879 (5th Cir. 1969). There, two suits for contractual indemnity were found to state the same cause of action where the allegations were based on similar clauses contained in two different documents of a complex lease-cum-license agreement.

The causes of action set forth in each of the Maher cases bear far less resemblance to one another than the causes of action in *Wasoff* and *Seaboard*.

28. Wright Root Beer Co. v. Dr. Pepper Co., 414 F.2d 887 (5th Cir. 1969).

29. *Id.* at 892.

30. 235 So.2d at 404.

The state Supreme Court expressly refused to reach the constitutional arguments offered on appeal by the parties.

■ Admittedly, there is an overlap in the operative facts respecting both claims. It is true that Maher's success in either action might result in the same ultimate outcome, namely, dismantling the cottage. Nevertheless, the state and federal complaints articulate distinct causes of action—one based on state law, one on federal constitutional precepts.[31] The analysis and precedents employed in making the two arguments are quite distinct. Somewhat disparate proof would be required in assessing whether the City Council has overstepped its authority under Louisiana law, or whether a taking has occurred in contravention of the Fifth Amendment.

We need not decide whether the same result would obtain had the initial suit been brought in the federal court operating under federal rules and policies respecting joinder of claims arising from a common factual basis.[32] All we decide here is that, under the configuration of this case, entwined with local Louisiana pleading and practice rules, disposition of the merits is not foreclosed by res judicata.

Indeed, the very policies favoring an end to litigation point to the immediate adjudication of the merits. At this juncture, no fewer than five tribunals have been presented with Maher's claims respecting the elimination of his cottage. The parties have spent themselves—to date unsuccessfully—to obtain a definitive judicial response. But, even if this

Court were to dismiss the present action, litigation between the parties would not necessarily be terminated. Maher might still return to the state courts to pursue his constitutional claim. The interest of judicial peace would thus seem poorly served by a dismissal here granted on grounds of res judicata.

Furthermore, it appears that proceedings have been instituted against Maher for violation of the maintenance clauses of the Vieux Carré Ordinance.[33] As a defense to any prosecution under such provisions the question of an unconstitutional taking of Maher's property might arise, requiring judicial attention in yet another forum.

For these reasons we conclude that res judicata and collateral estoppel are inapplicable, and that the energy of both the parties and the courts would be best conserved by proceeding to address the merits of Maher's allegations.

*III. The Vieux Carré Ordinance is a Proper Exercise of the Police Power.*

The Supreme Court has erected wayposts to guide our consideration whether an enactment such as the Vieux Carré Ordinance violates due process. A legislative determination is generally accorded a presumption of constitutionality,[34] but it is nevertheless subjected to several tests before its validity is established. To be sound, the enactment must be within the perimeter of the police power, an authority residing in the law-making body to secure, preserve and promote the general health, welfare and safety.[35] A regulatory ordinance, to be sustained as

**31.** Since the state court did not address the constitutional questions and since a subsequent state court action would not seem to be barred by local res judicata rules, the court cannot conclude that the present action is foreclosed because the matters raised "should have been litigated" in the earlier suit. *See* note 12 supra.

**32.** At oral argument an analogy was suggested to England v. Louisiana State Bd. of Medical Examiners, 375 U.S. 411, 84 S.Ct. 461, 11 L.Ed.2d 440 (1964). *England* adopted a rule for adjudication of state and federal claims in an abstention situation. Had all of Maher's claims been brought as a single matter in the

federal court, and had abstention been ordered regarding the state law claims, the *England* case would have been apposite.

**33.** Vieux Carré Ordinance §§ 65–36, –37. The suit against Maher for noncompliance is in abeyance pending resolution of this appeal. *See* note 85 infra.

**34.** Goldblatt v. Hempstead, 369 U.S. 590, 82 S.Ct. 987, 8 L.Ed.2d 130 (1962); Village of Euclid v. Ambler Realty Co., 272 U.S. 365, 47 S.Ct. 114, 71 L.Ed. 303 (1926).

**35.** Berman v. Parker, 348 U.S. 26, 75 S.Ct. 98, 99 L.Ed. 27 (1959).

a suitable exercise of the police power, must bear a real and substantial relation to a legitimate state purpose.[36] The means selected must be reasonable and of general application,[37] and the law must not trench impermissibly on other constitutionally protected interests.[38]

Maher contends that, although the legislative purpose underlying the preservation of the Vieux Carré, may be unobjectionable, the general program of effectuation as well as the denial of Maher's demolition permit have inadequate standards and an arbitrary enforcement that violate due process. Furthermore, he asserts that the law is confiscatory in its operation and constitutes a taking that requires compensation.

A substantial body of precedent exists respecting the appropriate balancing of interests where an ordinance diminishes the freedom of an individual owner to dispose of his property in the name of what the lawmaker deems the greater public benefit. It is generally accepted that legislative bodies[39] are entrusted with the task of defining the public interest and purpose, and of enacting laws in furtherance of the general good.[40] The Supreme Court has made it clear that, while the police power is not unlimited, its boundaries are both ample and protean.[41] Drawing on the rich and flexible police power, a legislature has the authority to respond to economic and cultural developments cast in a different mold, and to essay new solutions to new problems. In Village of Euclid v. Ambler Realty Co., the watershed case upholding the right of a municipality to enact a general zoning ordinance, the Supreme Court observed:

[P]roblems have developed, and constantly are developing, which require, and will continue to require, additional restrictions in respect of the use and occupation of private lands in urban communities. Regulations, the wisdom, necessity and validity of which, as applied to existing conditions, are so apparent that they are now uniformly sustained, a century ago, or even half a century ago, probably would have been rejected as arbitrary and oppressive.[42]

Accordingly, no fixed constraints may be placed on the police power for the future. Rather, each case must be evaluated as it arises, on its own facts and in light of the prevailing circumstances.[43]

A keystone of due process analysis is the determination that the state purpose to be served is legitimate. It would therefore appear beneficial to detail the substantial support that exists for a legislative determination to preserve historic landmarks and districts.[44]

**36.** Village of Belle Terre v. Boraas, 416 U.S. 1, 94 S.Ct. 1536, 39 L.Ed.2d 797 (1974) (family values); Paris Adult Theatre I v. Slater, 413 U.S. 49, 93 S.Ct. 2628, 37 L.Ed.2d 446 (1973) (quality of life); *Euclid,* supra note 34 (health, traffic, safety); Walls v. Midland Carbon Co., 254 U.S. 300, 41 S.Ct. 118, 65 L.Ed. 276 (1920) (preserve natural gas resource); Lawton v. Steele, 152 U.S. 133, 14 S.Ct. 499, 38 L.Ed. 385 (1894) (preserve fishery resource); Mugler v. Kansas, 123 U.S. 623, 8 S.Ct. 273, 31 L.Ed. 205 (1887) (discourage intoxication).

**37.** *Berman,* supra note 35; *Euclid,* supra note 34; Reinman v. Little Rock, 237 U.S. 171, 35 S.Ct. 511, 59 L.Ed. 900 (1915).

**38.** *Belle Terre,* supra note 36; Pennsylvania Coal Co. v. Mahon, 260 U.S. 393, 43 S.Ct. 158, 67 L.Ed. 322 (1922); *Mugler,* supra note 36.

**39.** Local ordinances are accorded the same Fifth Amendment due process and "taking" analysis as state statutes. *See, e. g., Goldblatt,* supra note 34; Seattle Trust Co. v. Ro-

berge, 278 U.S. 116, 49 S.Ct. 50, 73 L.Ed. 210 (1928); *Euclid,* supra note 34.

**40.** *Belle Terre,* supra note 36; *Goldblatt,* supra note 34; *Berman,* supra note 35; *Mahon,* supra note 38; *Midland Carbon,* supra note 36.

**41.** *Paris Adult Theatre,* supra note 36; *Berman,* supra note 35; *Euclid,* supra note 34; Hadacheck v. Sebastian, 239 U.S. 394, 36 S.Ct. 143, 60 L.Ed. 348 (1915).

**42.** 272 U.S. at 386–87, 47 S.Ct. at 118.

**43.** *Berman; Euclid.*

**44.** The district court stated:

The courts have repeatedly sustained the validity of architectural control ordinances as police power regulation, especially when historic or touristic districts like the Vieux Carré are concerned."

371 F.Supp. at 661, citing Santa Fe v. Gamble, Skogmo, Inc., 73 N.M. 410, 389 P.2d 13 (1964); . Town of Deering ex rel. Bittenbender v. Tibbets, 105 N.H. 481, 202 A.2d 232

The Ordinance in question here declares as its objective:

> The Vieux Carré shall have for its purpose the preservation of such buildings in the Vieux Carré section of the City as, in the opinion of the Commission, shall have architectural and historical value and which should be preserved for the benefit of the people of the City and State.[45]

■ Proper state purposes may encompass not only the goal of abating undesirable conditions, but of fostering ends the community deems worthy. In Berman v. Parker the Supreme Court, giving "well-nigh conclusive" effect to the legislative determination of community needs and solutions, upheld the purposes of a slum clearance program designed to "develop a more balanced, more attractive community."[46]

■ Nor need the values advanced be solely economic or directed at health and safety in their narrowest senses. The police power inhering in the lawmaker is more generous, comprehending more subtle and ephemeral societal interests. "The values [that the police power] represents are spiritual as well as physical, aesthetic as well as monetary. It is within the domain of the legislature to determine that the community should be beautiful as well as healthy, spacious as well as clean, well-balanced as well as carefully patrolled."[47]

This circuit has held in Stone v. City of Maitland that zoning ordinances may be sustained under the police power where motivated by a desire to "enhanc[e] the aesthetic appeal of a community."[48] The Court noted with approbation city action to maintain "the value of scenic surroundings" and "the preservation of the quality of our environment."[49]

One of the nation's distinctive historic districts is found in New Orleans. The federal,[50] state and local government have each ascertained that benefits would be conferred on society by preservation of the French Quarter.

Throughout the country, there appears to be a burgeoning awareness that our heritage and culture are treasured national assets. Many locales endowed with historic sites have enacted protective measures for them. The Vieux Carré Ordinance is among the earliest efforts in this regard, and has served as a prototype for similar enactments elsewhere.[51]

The federal government also has acknowledged our debt to the past, in the National Historic Preservation Act of 1966:

---

(1964); Reid v. Architectural Board of Review, 119 Ohio App. 67, 192 N.E.2d 74 (1963); Opinion of Justices, 103 N.H. 268, 169 A.2d 762 (1961); Sunad, Inc. v. City of Sarasota, 122 So.2d 611 (Fla.1960); State ex rel. Saveland Park Holding Corp. v. Wieland, 269 Wis. 262, 69 N.W.2d 217, cert. den. 350 U.S. 841, 76 S.Ct. 81, 100 L.Ed. 750 (1955); Opinion of the Justices, 333 Mass. 773, 128 N.E.2d 557 (1955); New Orleans v. Levy, 223 La. 14, 64 So.2d 798 (1953).

45. Vieux Carré Ordinance § 65–6. In addition to conferring cultural benefits, it is not contested that preservation of the Vieux Carré district promotes the economic welfare of the city by attracting tourists.
*See also* La.Const. supra note 4.

46. 348 U.S. 26, 32, 33, 75 S.Ct. 98, 102, 99 L.Ed. 27 (1954). To like effect, *see* Village of Belle Terre v. Boraas, 416 U.S. 1, 9, 94 S.Ct. 1536, 1541, 39 L.Ed.2d 797 (1974) ("the police power is not confined to elimination of filth, stench and unhealthy places. It is ample to lay out zones where family values . . . and the blessings of quiet seclusion . . . make the area a sanctuary for people."); *Euclid,* supra note 34.

47. *Berman,* 348 U.S. at 33, 75 S.Ct. at 102. *Paris Adult Theatre,* supra note 36 (police power includes authority to regulate against obscenity).
The Supreme Court has also affirmed the power of legislatures to enact protective measures regulating the use of the natural resources of the community. Walls v. Midland Carbon Co., 254 U.S. 300, 41 S.Ct. 118, 65 L.Ed. 276 (1920) (natural gas); Lawton v. Steele, 152 U.S. 133, 14 S.Ct. 499, 38 L.Ed. 385 (1894) (fish).

48. 446 F.2d 83, 89 (5th Cir. 1971).

49. *Id.*

50. *See* notes 52–53, infra, and accompanying text.

51. *See, e. g.,* the legislation under discussion in cases at note 44, supra.

The Congress finds and declares—

(a) that the spirit and direction of the Nation are founded upon and reflected in its historic past;

(b) that the historical and cultural foundations of the Nation should be preserved as a living part of our community life and development in order to give a sense of orientation to the American people . . .[52]

An Advisory Committee on Historic Preservation was established, and a National Register of Historic Places was developed that included the Vieux Carré.[53]

The Court is not free to reverse the considered judgment of the legislature that it is in the public interest to preserve the status quo in the Vieux Carré and to scrutinize closely any proposed change in the ambiance by private owners. Where a legislative determination is "fairly debatable, the legislative judgment must be allowed to control."[54] We thus conclude that, considering the nationwide sentiment for preserving the country's heritage and with particular regard to the context of the unique and characteristic French Quarter, the objective of the Vieux Carré Ordinance falls within the permissible scope of the police power.

Since we deal here with legislation designed to effect a legitimate economic and social policy, so long as the means chosen—a matter largely entrusted to the legislature—are reasonable and not arbitrary, due process is satisfied.[55] It is not disputed that the Vieux Carré Ordinance furthers the object of preserving the character of the district in a meaningful fashion.

The Ordinance is of general application to a well-defined geographic area. In addition, it establishes a Commission whose professional qualifications and means of selection are delineated. Within the boundaries of the French Quarter, the Commission is directed to review plans for all proposed demolition or construction and its duties and procedures are specific. After due consideration the Commission reports its recommendations to the Director of the Department of Safety and Permits, whereupon a permit for the proposed work may issue. Provision is made for review by the City Council.[56]

Though generally the procedures ordained are not faulted,[57] Maher attacks the schema as violative of due process because, in his view, it provides inadequate guidance to the Commission for the exercise of its administrative judg-

---

**52.** 16 U.S.C. § 470 (1974). *See also* 42 U.S.C. § 1460(b) (1970) (federal support for local historic preservation in urban renewal programs). The problem of landmark and historic district preservation has generated considerable scholarly attention. J. Costonis, Space Adrift: Saving Urban Landmarks Through the Chicago Plan (1974). Forman, Historic Preservation and Urban Development Law in Louisiana, 21 La.B.J. 197 (1974); Sax, Takings, Private Property and Public Rights, 81 Yale L.J. 149 (1971); Michelman, Property, Utility and Fairness: Comments on the Ethical Foundations of "Just Compensation" Law, 80 Harv.L.Rev. 1165 (1967); Note, 63 Colum.L.Rev. 708 (1963). *See also* Aesthetics vs. Free Enterprise—A Symposium, 15 Prac.Law. 17 (1969); Legal Methods of Historic Preservation, 19 Buffalo L.Rev. 611 (1970).

**53.** National Park Service, The National Register of Historic Places, 103–06 (1969).

**54.** *Euclid*, 272 U.S. at 388, 47 S.Ct. at 118. *See also Paris Adult Theatre*, supra note 36; *Goldblatt*, supra note 34.

**55.** *Berman,* supra note 35; *Euclid,* supra note 34.

**56.** *See* note 66, infra.

**57.** The suggestion was advanced that the Ordinance has been, and continues to be, enforced in an arbitrary fashion and not altogether free from influence. Evidence, including a federally funded report on the Commission's operations, was inserted in the record to support such claims. Charges that improper considerations play a role in decision making respecting the French Quarter merit serious attention by the Court. The district court decided that on balance, the allegations in this respect were not substantiated by the record. On review, we affirm the district court on the basis that its result finds support in the record and is not clearly erroneous. In so affirming, however, we pause to note that past enforcement of the Ordinance does not seem to have been uniformly predictable.

ment. The City concedes that no official objective standards have been promulgated in this regard. Maher suggests that formal standards are mandatory to guide the Commission in its resolution of the buildings deserving of preservation.

■ To satisfy due process, guidelines to aid a commission charged with implementing a public zoning purpose need not be so rigidly drawn as to prejudge the outcome in each case, precluding reasonable administrative discretion. Because of the circumstances pertaining to the Vieux Carré, we conclude that the Ordinance provides adequate legislative direction to the Commission to enable it to perform its functions consonant with the due process clause.

■ While concerns of aesthetic or historical preservation do not admit to precise quantification, certain firm steps have been undertaken here to assure that the Commission would not be adrift to act without standards in an impermissible fashion. First, the Louisiana constitution,[58] the Vieux Carré Ordinance [59] and, by interpretation, the Supreme Court of Louisiana,[60] have specified their expectations for the Vieux Carré, and the values to be implemented by the legislation.

Further, the legislature exercises substantial control over the Commission's decision making in several ways. Where possible, the ordinance is precise, as for example in delineating the district,[61] defining what alterations in which locations require approval,[62] and particularly regulating items of special interest, such as floodlights, overhanging balconies or signs.[63]

Another method by which the lawmaking body curbed the possibility for abuse by the Commission was by specifying the composition of that body and its manner of selection.[64] Thus, the City is assured that the Commission includes architects, historians and business persons offering complementary skills, experience and interests.

The elaborate decision-making and appeal process set forth in the ordinance creates another structural check on any potential for arbitrariness that might ex-

58. La.Const. Art. XIV, § 22A, urges the City to protect "the quaint and distinctive character of the area." *See* note 4 *supra.*

59. Vieux Carré Ordinance § 65–6 charges the Commission to "preserv[e] such buildings . . . [as] shall have architectural and historical value and which should be preserved for the benefit of the people. . . . "

60. *See, e. g.,* City of New Orleans v. Pergament, 198 La. 852, 5 So.2d 129, 131 (1941), which characterized the Commission's purpose as "preserv[ing] the antiquity of the whole French and Spanish Quarter, the tout ensemble, so to speak, by defending this relic [the Vieux Carré] against iconoclasm or vandalism."

61. Vieux Carré Ordinance § 65–6.

62. Vieux Carré Ordinance § 65–8 (Ordinance extends to exterior work on any building that fronts on a public street or alley within the Vieux Carré). *See* note 5, supra.

63. Vieux Carré Ordinance §§ 56–11; –13; –17 to –33.

64. Vieux Carré Ordinance §§ 56–2 to –4. *Recommendation and appointment of members.*
   The Vieux Carre Commission shall consist of nine members, all of whom shall be citizens of the city. They shall be appointed by the Mayor with the advice and consent of the Council. The members of the Commission shall be appointed by the Mayor as follows: one from a list of two persons recommended by the Louisiana Historical Society; one from a list of two persons recommended by the Curators of the Louisiana State Museum; one from a list of two persons recommended by the Association of Commerce of the city; three qualified architects from a list of six qualified architects recommended by the New Orleans Chapter of the American Institute of Architects and three at large.
   § 65–3. *Term; vacancies.*
   Each of the members of the Vieux Carre Commission shall be appointed for a term of four years. Whenever the term of a member of the Commission expires the Mayor shall appoint his successor from a list selected by the body which made the original selection from which the vacancy has occurred.
   § 65–4. *Employees and committees.*
   The Vieux Carre Commission may select and employ such persons as may be necessary to carry out the purposes for which it is created. The City Attorney shall be ex officio the attorney for the Commission. The Commission may designate and appoint, from among its members, various committees with such powers and duties as the Commission may have and prescribe.

ist.[65] Decisions of the Commission may be reviewed ultimately by the City Council itself. Indeed, that is the procedure that was followed in the present case.[66]

It is true, as Maher observed, that no officially promulgated regulations pinpoint each decision by the Commission. Nonetheless, apart from the evident purpose of the legislation and the taut lines of review maintained by the legislature over the operation of the Commission, other fertile sources are readily available to promote a reasoned exercise of the professional and scholarly judgment of the Commission. It may be difficult to capture the atmosphere of a region through a set of regulations. However, it would seem that old city plans and historic documents, as well as photographs and contemporary writings may provide an abundant and accurate compilation of data to guide the Commission. And the district court observed,

> In this case, the meaning of a mandate to preserve the character of the Vieux Carré "takes clear meaning from the observable character of the district to which it applies." [67]

Aside from such contemporary indicia of the nature and appearance of the French Quarter at earlier times, the Commission has the advantage at present of a recent impartial architectural and historical study of the structures in the area. The Vieux Carré Survey Advisory Committee conducted its analysis under a grant to Tulane University from the Edward G. Schleider Foundation. Building by building, the Committee assessed the merit of each structure with respect to several factors. For example, regarding the Maher cottage at issue here, the Louisiana Supreme Court noted that the Survey Committee "was of the opinion that this cottage was worthy of preservation as part of the overall scene." [68] While the Schleider survey in no way binds the Commission, it does furnish an independent and objective judgment respecting the edifices in the area. The existence of the survey and other historical source material assist in mooring the Commission's discretion firmly to the legislative purpose.[69]

We thus conclude that the present zoning ordinance, enacted to promote the social and economic goals of preserving an historical district judged of public value, does not delegate unfettered authority to the Vieux Carré Commission. Rather, the legislature has provided adequate structure and guidelines to that administrative body.

Although it primarily concerned a taking, Berman v. Parker [70] supplies an apt

---

**65.** Vieux Carré Ordinance §§ 65–5; –8 to –10.

**66.** The Ordinance provides for review by the City Council of a disapproved petition. § 65–10. No provision expressly exists for appealing the grant of a permit, but the Louisiana Supreme Court has interpreted the Ordinance to allow such review as well. Maher v. City of New Orleans, 256 La. 131, 235 So.2d 402 (1970). Its determination of Louisiana law is binding on this Court. Reinman v. City of Little Rock, 237 U.S. 171, 35 S.Ct. 511, 59 L.Ed. 600 (1915).

At oral argument it was contended that an element of arbitrariness was interjected by the right to appeal from the Commission, a body of experts, to the City Council, a legislative body responsive to the electoral process. The apparent suggestion was that the City Council does not enjoy the expert status of the Commission and, in addition, would be susceptible to political pressure in reaching its decisions. We reject such an intimation here. The expert status of the Commission members is particularly relevant to sustain its ability to function under power delegated by the legislature; the legislators themselves are the repository of public trust, and no delegation problem arises where the City Council itself decides a matter. Insofar as the suggestion is of impropriety, we affirm the district court conclusion that the proof was inadequate. *See* note 57 supra.

**67.** 371 F.Supp. at 664, *quoting* Town of Deering ex rel. Bittenbender v. Tibbets, 105 N.H. 481, 202 A.2d 232 (1964).

**68.** 235 So.2d 402, 407, n. 4.

**69.** In this regard, we find the present case distinguishable from Barnes v. Merritt, 428 F.2d 284 (5th Cir. 1970), and Hornsby v. Allen, 326 F.2d 605 (5th Cir. 1964). In those cases successful attacks were mounted on the denial of liquor permits, because of a total absence of proper standards to govern the administrative discretion. This circuit found that the unfettered, unreviewable power granted the agency in those situations offended due process.

**70.** 348 U.S. 26, 75 S.Ct. 98, 99 L.Ed. 27 (1959).

analogy to the present situation. The question arose whether it was necessary to have legislative guidance for each individual decision in a context of a district-wide project to eliminate slums and blighted areas. A redevelopment agency had decided to raze an entire district, and an individual owner objected to implementing the decision with respect to its property, insisting that its building should be allowed to stand because it was safe, sanitary and profitable.

The Supreme Court held that the agency, acting with the needs of the whole community in mind and the advantage of expert consultation, was free to implement its mandate with respect to the entire district without the need for a specific showing in each case that its action was necessary to the purpose of the legislation. Allowing each affected party to challenge the basis for an agency determination could thwart a comprehensive project, the Court held. It would appear that the Vieux Carré Commission, like the agency in *Berman,* acts in harmony with the public interest and directive, affords procedural fairness, and utilizes expert assistance.

By contrast, there is a case in which the Supreme Court did strike down a zoning regulation because of its improper delegation of arbitrary, unreviewable decision-making power by the enacting body. In Seattle Trust Co. v. Roberge,[71] a local ordinance prohibited the erection of a philanthropic institution in a specified area, unless written consent was acquired from surrounding neighbors. Such provision, the Court held, violated due process, because no standards existed to govern consent, and consent could be withheld for any reason or for no reason. An owner was afforded no review or other recourse, and was thus entirely subject to the caprice of its neighbors.

In addition to his argument, that the ordinance is arbitrary for want of standards, Maher asserts that the ordinance as applied to him was arbitrary, because the decision of the City Council to prohibit him from leveling the Dumaine Street residence was unsupported by reasons.[72] The district court, faced with this contention stated,

> Considerable testimony supported the [Council's] position that the Maher cottage had substantial architectural value as part of the Vieux Carré scene as well as some individual architectural merit.

> .     .     .     .     .

> [Although] a finding [in Maher's favor] would have certainly been possible [,]   .  .  .   [t]he fact that the city authorities did not ultimately agree   .  .  .   does not make their action arbitrary.[73]

The district court was persuaded that
> [T]his case has not been an example so much of a lack of standards as a disagreement as to whether the Maher cottage qualified for demolition under the applicable standards. In view of the whole record of this case, it is the opinion of the Court that since the City Council, rather than acting arbitrarily, merely resolved a fair, albeit heated, difference of opinion, the judgment of that zoning authority should be followed.[74]

As a reviewing tribunal, we cannot detect reversible error in the district court's conclusion.

*IV.   There is no Taking of the Dumaine Cottage that Would Require the Payment of Compensation.*

Maher presents a twofold basis for his contention that the application of the Vieux Carré Ordinance to the cottage constitutes a taking of his property.

**71.** 278 U.S. 116, 49 S.Ct. 50, 73 L.Ed. 210 (1928).

**72.** The adequacy of the factual basis for the decision to withhold the Dumaine cottage demolition permit was determined on the merits by the Louisiana Supreme Court, 235 So.2d at 406. It would therefore seem that the value of retaining the cottage is established by collateral estoppel, leaving open constitutional questions only. *See* note 23 supra.

**73.** 371 F.Supp. at 663.

**74.** *Id.* at 664.

First, he claims that unless he can build the desired apartment complex, he may not pursue the most profitable use to which his property may be put. Second, he asserts that the city may not permissibly impose an affirmative maintenance duty upon a property owner without taking the property under the power of eminent domain. We deal with these two contentions in turn.

To survive attack as a taking, the zoning regulation must—as a threshold matter—satisfy the due process requirements that its purpose and means are reasonable. Even if it comports with due process, a regulatory ordinance may nonetheless be a taking if it is unduly onerous so as to be confiscatory. The Supreme Court has held that every regulation is in some sense a prohibition[75] and that whether a given regulation treads over the line of proper regulation and operates as a taking of property is a matter to be determined under all the circumstances in a specific case. Justice Holmes has remarked:

> Constitutional rights like others are matters of degree. To illustrate: Under the police power, in its strict sense, a certain limit might be set to the height of buildings without compensation; but to make that limit five feet would require compensation and a taking by eminent domain.[76]

The Supreme Court repeatedly made clear that an ordinance within the police power does not become an unconstitutional taking merely because, as a result of its operation, property does not achieve its maximum economic potential.[77] In Goldblatt v. Hempstead an ordinance was amended to forbid excavation below the water table. Goldblatt owned property theretofore dedicated to quarrying which had through the years created a rather deep lake of several acres. The ordinance as applied to Goldblatt substantially reduced the value of his property and its potential utility. The Supreme Court nevertheless upheld the validity of the measure as a reasonable regulation, stating:

> Concededly the ordinance completely prohibits a beneficial use to which the property has previously been devoted. However, such a characterization does not tell us whether or not the ordinance is unconstitutional. It is an oft-repeated truism that every regulation necessarily speaks as a prohibition. If this ordinance otherwise is a valid exercise of the town's police powers, the fact that it deprives the property of its most beneficial use does not render it unconstitutional.[78]

Relying on Mugler v. Kansas,[79] the Supreme Court in *Goldblatt* observed that a properly enacted prohibition against a use of property for purposes adverse to the public weal is not controlled by the doctrine of eminent domain. Such regulation "is not, and, consistently with the existence and safety of organized society, cannot be, burdened with the condition that the State must compensate such individual owners for pecuniary losses they may sustain . . . ."[80]

The Court's attention has been directed to ordinances of other municipalities where the authority to prohibit destruction of designated buildings is more limited. Refusals to allow razing may be accompanied by tax credit arrangements, by permission to transfer "building rights" to other owners or by other economic incentives or palliatives; ordinances may prohibit demolition conditionally or temporarily.[81] Such measures

---

75. *Euclid,* supra note 30.

76. Martin v. District of Columbia, 205 U.S. 135, 139, 27 S.Ct. 440, 441, 51 L.Ed. 743 (1907).

77. Goldblatt v. Town of Hempstead, 369 U.S. 590, 82 S.Ct. 987, 8 L.Ed.2d 130 (1962); Euclid v. Ambler Realty Co., 272 U.S. 365, 47 S.Ct. 114, 71 L.Ed. 303 (1926); Hadacheck v. Sebastian, 239 U.S. 394, 36 S.Ct. 143, 60 L.Ed. 348 (1915).

78. 369 U.S. at 593, 82 S.Ct. at 989, citing cases.

79. 123 U.S. 623, 8 S.Ct. 273, 31 L.Ed. 205 (1887).

80. 369 U.S. at 593, 82 S.Ct. at 989, *quoting* Mugler v. Kansas, 123 U.S. 623, 8 S.Ct. 273, 31 L.Ed. 205 (1887).

81. *See, e. g.,* Building and Zone Code of Portland, Oregon, Chapter 33.120, Historical Build-

may be considered wiser or fairer by a legislature which contemplates an historic preservation enactment. All we must decide today is whether an enactment that does not furnish alleviating devices may be constitutional.

An ordinance forbidding the demolition of certain structures, if it serves a permissible goal in an otherwise reasonable fashion, does not seem on its face constitutionally distinguishable from ordinances regulating other aspects of land ownership, such as building height, set back or limitations on use. We conclude that the provision requiring a permit before demolition and the fact that in some cases permits may not be obtained does not alone make out a case of taking.

As the ordinance was applied to Maher, the denial of the permit to demolish and rebuild does not operate as a classic example of eminent domain, namely; a taking of Maher's property for government use.[82] Nor did Maher demonstrate to the satisfaction of the district court that a taking occurred because the ordinance so diminished the

property value as to leave Maher, in effect, nothing.[83] In particular, Maher did not show that the sale of the property was impracticable, that commercial rental could not provide a reasonable rate of return, or that other potential use of the property was foreclosed.[84] To the extent that such is the theory underlying Maher's claim, it fails for lack of proof.

We finally consider Maher's objection to that portion of the ordinance requiring reasonable maintenance and repair of buildings in the French Quarter.[85] By imposing an affirmative duty on property owners to prevent and correct defects, Maher claims that the City Council has overstepped permissible bounds of police power and by requiring him to make expenditures has effectively taken his property. To do this, Maher invokes the eminent domain provisions and demands just compensation.

Tests set forth by the Supreme Court again inform our analysis.[86] Once it has been determined that the purpose of the Vieux Carré legislation is a proper one, upkeep of buildings appears reasonably necessary to the accomplishment of

---

ings and Sites (delay in grant of demolition permit to allow for public or private acquisition); Code of the City of Alexandria, Virginia, Article 14 (same); Administrative Code of the City of New York, Section 207.1.9 (demolition permit will issue if owner shows loss or inadequate return on property). *See generally* Costonis, supra note 52.

82. *See* United States v. Central Eureka Mining Co., 357 U.S. 155, 78 S.Ct. 1097, 2 L.Ed.2d 1228 (1958). *But see* Keystone Associates v. Moerdler, 19 N.Y.2d 78, 278 N.Y.S.2d 185, 224 N.E.2d 700, aff'd 19 N.Y.2d 598, 278 N.Y.S.2d 243, 224 N.E.2d 744 (Ct.Appeals 1967) (a taking of property of the old Metropolitan Opera House found where demolition was retarded and use limited severely).

83. In any case, while a substantial diminution in value may be evidence of a taking, "it is by no means conclusive." Goldblatt v. Hempstead, 369 U.S. at 594, 82 S.Ct. at 990. *See also Euclid,* supra.

84. Maher objects strenuously to the district court's observation that rental values in the French Quarter are reputedly relatively high. We need not decide whether judicial notice was improperly exercised in this regard, for any error that may have occurred was not reversible. We also find unpersuasive Maher's

contention that a critical fact is that he inherited the property rather than purchasing it.

85. Vieux Carré Ordinance § 65–36. *Preservation of existing structures by owner or person having legal custody thereof.*

> All buildings and structures in that section of the city known as the Vieux Carre Section . . . shall be preserved against decay and deterioration and free from certain structural defects in the following manner, by the owner thereof . . . [who] . . . shall repair such building if it is found to have any of the following defects:

There follows a list of unsafe, nonweather sound and deteriorated conditions, including falling portions of buildings, deteriorated or inadequate foundation, floors, walls, support, ceilings, roofs, chimneys, and ineffectively weathertight exterior or windows.

Under Section 65–37, charges may be brought against a noncomplying owner. *See* note 33 supra.

86. *Goldblatt* supra note 34; *Euclid* supra note 34. In *Goldblatt,* the Supreme Court did not reach the question whether an affirmative duty to erect a fence and fill in the lake was overly burdensome and beyond the police power.

 

the goals of the ordinance.[87] As noted above, the responsibility for determining the wisdom of a legislative determination is not lodged with the judiciary.

The fact that an owner may incidentally be required to make out-of-pocket expenditures in order to remain in compliance with an ordinance does not per se render that ordinance a taking. In the interest of safety, it would seem that an ordinance might reasonably require buildings to have fire sprinklers or to provide emergency facilities for exits and light. In pursuit of health, provisions for plumbing or sewage disposal might be demanded. Compliance could well require owners to spend money. Yet, if the purpose be legitimate and the means reasonably consistent with the objective, the ordinance can withstand a frontal attack of invalidity.

Our decision is narrow regarding the requirement reasonably to maintain property in the French Quarter. In holding that the ordinance provision necessitating reasonable maintenance is constitutional, we do not conclude that every application of such an ordinance would be beyond constitutional assault. For, as the Supreme Court emphasized in *Goldblatt,* even a generally constitutional regulation may become a taking in an isolated application if "unduly oppressive" to a property owner.[88] It may be that, in some set of circumstances, the expense of maintenance under the Ordinance—were the city to exact compliance—would be so unreasonable as to constitute a taking.[89]

The burden of proof as to this point falls on the party alleging the taking.[90] On the evidence presented here, the district court found that Maher had not sustained his burden of demonstrating that the upkeep provisions were inordinately burdensome.[91] We go no further than to state that we cannot find the district court determination in this regard to be erroneous.

## V. Conclusion.

The Vieux Carré Ordinance was enacted to pursue the legitimate state goal of preserving the "tout ensemble" of the historic French Quarter. The provisions of the Ordinance appear to constitute permissible means adapted to secure that end. Furthermore, the operations of the Vieux Carré Commission satisfy due process standards in that they provide reasonable legislative and practical guidance to, and control over, administrative decision making.

Once the district court concluded it was at liberty, under principles of finality, to reach the merits of Maher's case, that court was not persuaded that the denial of a demolition permit was arbitrary. It did not find that the ordinance as applied to Maher constituted a taking of Maher's property for which compensation was indicated. These determinations, based on the proof proffered there, are not clearly erroneous.

An order will, therefore, be entered affirming the judgment of the district court.

Affirmed.

---

87. *Goldblatt,* supra note 34. *Euclid,* supra note 34.

88. 369 U.S. at 595, 82 S.Ct. 987, *quoting* Lawton v. Steele, 152 U.S. 133, 137, 14 S.Ct. 499, 38 L.Ed. 385 (1894).

89. *See Keystone Associates,* note 82 supra.

90. *Goldblatt,* 367 U.S. at 596, 82 S.Ct. 987.

91. 371 F.Supp. at 662.