[No. 52141-7. En Banc. May 15, 1986.]

META KAPLAN BUTTNICK, *Appellant,* v. THE CITY OF SEATTLE, *Respondent.*

*David J. DeLaittre,* for appellant.

*Douglas N. Jewett, City Attorney,* and *Gordon F. Crandall* and *James Fearn, Assistants,* for respondent.

DOLLIVER, C.J.—Plaintiff challenges the Seattle City Council's denial of her appeal of the Pioneer Square Historic Preservation Board's ruling she remove and replace a parapet/pediment (parapet) on her building located in a historic preservation district. Plaintiff claims Seattle's action was an unconstitutional "taking" of the use of her property without compensation. The trial court upheld the Council's action, denying plaintiff's appeal. We affirm the trial court.

In 1970 the Seattle City Council passed ordinance 98852 creating the Pioneer Square Historic District. This legislation officially recognized Pioneer Square as one of the few areas in the city of Seattle which is consistent in historical and architectural character. Ordinance 98852 requires no permits shall be issued for alterations to the exterior appearance of buildings in this historic district except pursuant to a certificate of approval from the Director of the Department of Community Development. *See* Seattle City Ordinance 98852, § 6. The 7–member Pioneer Square Historic Preservation Board, a citizens' advisory board, makes recommendations to the Director regarding application

requests.

Plaintiff purchased the building at issue in 1974 presumably with an awareness of the ordinance's design controls. Plaintiff has been connected with ownership of other buildings in the historic district.

Early in 1977 the Building Department inspected the plaintiff's property and found the parapet in a hazardous condition. It notified plaintiff immediate corrective action was required. No corrective action was taken and on October 6, 1977, the Building Department issued an emergency order calling for stabilization or removal of the parapet.

On March 1, 1978, the Pioneer Square Historic Preservation Board granted a certificate of approval allowing structural stabilization of the parapet. On October 4, 1978, plaintiff's son requested the Board's approval for removal of the parapet without replacement. The Board reaffirmed its March 1978 position regarding the need to rebuild the parapet to match its existing detailing and features.

On January 3, 1979, the Board reviewed plaintiff's application for removal and replacement of the parapet and extended a conceptual approval of the proposal with the understanding the final proposal would come before the Board for approval in the immediate future. On February 28, 1979, the Board was advised a permit had been issued by the Building Department for removal of the parapet without a certificate of approval. An ad hoc committee of the Board recommended at a special meeting on March 2, 1979 that the Director of the Department of Community Development issue a certificate of approval for immediate removal of the parapet with the proviso the owner replace it by September 25, 1979. On March 6, 1979, the Building Department revised the permit previously issued to say "[o]wner shall follow instructions in [the Department of Community Development] letter."

Plaintiff appealed the Director's decision to the Seattle City Council which denied the appeal on September 17, 1979. Plaintiff sought judicial review in superior court where the matter was remanded to the City Council

because of procedural errors in the hearings.

The matter was reheard by the City Council, and the appeal was denied again on February 22, 1983. The City Council concluded:

> The concept underlying the formation of the Historic District is that all the buildings stand together as a whole, and that they all work together in their historical context and benefit mutually from consistent maintenance and improvements. The estimated cost of replacement of the parapet and pediment on the subject building does not appear to impose an unnecessary or undue hardship on the property owner, considering its market value and income–producing potential.

The City Council extended plaintiff's compliance date to December 31, 1983.

Plaintiff again sought judicial review and a writ of review was issued. The trial court affirmed the City Council's decision. Plaintiff filed for review in the Court of Appeals. We accepted the case as an administrative transfer.

## I

Judicial review was sought in this case pursuant to a writ of review. A statutory writ serves to review agency actions only when the agency is exercising quasi–judicial functions. *Mentor v. Nelson,* 31 Wn. App. 615, 617–18, 644 P.2d 685 (1982). In a review by certiorari under RCW 7.16.120, both the trial court and this court are to review the record of the administrative body to determine whether its action was arbitrary and capricious or contrary to law. *Door v. Puyallup,* 33 Wn. App. 310, 312, 654 P.2d 720 (1982).

Where there is a denial of a building permit, however, we have used a "higher degree of judicial scrutiny" and have applied the "clearly erroneous" test when reviewing the administrative decision. *Polygon Corp. v. Seattle,* 90 Wn.2d 59, 578 P.2d 1309 (1978). This test takes the "arbitrary and capricious" test a step further and examines the entire record and "all the evidence in light of the public policy contained in the legislation authorizing the decision." *Polygon Corp.,* at 69. We will substitute our own judgment

*only* when "left with the definite and firm conviction that a mistake has been committed". *Ancheta v. Daly,* 77 Wn.2d 255, 259–60, 461 P.2d 531 (1969) (quoting *United States v. United States Gypsum Co.,* 333 U.S. 364, 395, 92 L. Ed. 2d 746, 68 S. Ct. 525 (1948)).

Plaintiff calls upon the court to apply "strict judicial standards" in its review, apparently confusing this with the strict scrutiny test used by the court when evaluating governmental actions which restrict fundamental rights. The clearly erroneous test is proper and was applied by the trial court in this case. In the words of the trial court:

> The test advanced by Mr. De Laittre for the Court is one of a clearly erroneous test, and I'm not prepared at all to say that this was a clearly erroneous decision. In fact, more likely than not, I would have made the same decision.

## II

The key remaining issue raised by the plaintiff is whether the application of Seattle's historical ordinance was "an unconstitutional taking". The major role of protecting our nation's historical landmarks and areas has been delegated to local governments where the real impact is felt and where major preservation decisions are made. 2 P. Rohan, *Zoning and Land Use Controls* § 7.01[1], at 7–3 (1986). The use of a municipality's police power to create ordinances which place restrictions on design and zoning of private structures has been upheld as constitutional. *Penn Cent. Transp. Co. v. New York City,* 438 U.S. 104, 57 L. Ed. 2d 631, 98 S. Ct. 2646 (1978); *Maher v. New Orleans,* 516 F.2d 1051 (5th Cir. 1975). The plaintiff in the present case does not challenge the constitutionality of Seattle City Ordinance 98852. Instead, plaintiff claims the requirement she replace the parapet is an unconstitutional "taking" of her property without compensation.

In the *Maher* case, the plaintiff argued the ordinance in question "took" his property because it imposed an affirmative duty to prevent and to correct defects in property located in the historic district. *Maher v. New*

*Orleans, supra.* The court rejected this argument reasoning once the purpose of a legislation was a proper one, the upkeep of buildings appeared necessary to accomplish the ordinance's goals. *Maher,* at 1067. The court found no "taking" violation because there was no evidence the ordinance so diminished the property value to leave the plaintiff, in effect, nothing. *Maher,* at 1066. However, the court cautioned that a regulation may become a taking in an isolated application if "'unduly oppressive' to a property owner." (Footnote omitted.) *Maher,* at 1067.

The United States Supreme Court in the *Penn Cent. Transp. Co.* case held the burdens of landmark regulation do not amount to a "taking" of property, at least where the owner retains reasonable beneficial use. *Penn Cent. Transp. Co.,* at 137–38. The Court quoted *Pennsylvania Coal Co. v. Mahon,* 260 U.S. 393, 413, 67 L. Ed. 322, 43 S. Ct. 158, 28 A.L.R. 1321 (1922), which stated:

"Government hardly could go on if to some extent values incident to property could not be diminished without paying for every such change in the general law[.]"

*Penn Cent. Transp. Co.,* at 124. The Court went on to observe it is "not in dispute" that "States and cities may enact land–use restrictions or controls to enhance the quality of life by preserving the character and desirable aesthetic features of a city". *Penn Cent. Transp. Co.,* at 129.

In this case, the City Council could reverse or modify the decision directing plaintiff to replace the parapet only if it found that: (1) every reasonable effort had been made by the applicant to agree to recommendations of the director; and (2) application of the requirements would cause undue and unnecessary hardship. Seattle City Ordinance 98852, § 6.1. The City Council, in applying this standard, determined plaintiff's circumstances did not justify a reversal or modification to the requirement she replace the parapet. This decision is consistent with the standards established by the Supreme Court in the *Mahon* and *Penn Cent. Transp. Co.* cases.

Plaintiff had numerous contacts and hearings with the

City regarding the parapet on her building. The record is replete with evidence of attempts by the City to provide opportunities for plaintiff to resolve the parapet issue. In his oral opinion, the trial judge stated the City Council found:

> [A] reasonable effort was not made by the property owner to correct the public safety hazard presented by deteriorated parapet and pediment when the hazard was first cited in 1977. It does not appear that a reasonable effort was made to meet the conditions imposed on the certificate of approval issued in 1979.
>
> That might well refer to the plan officially submitted to support the parapet, and then the rather immediate action, almost on the day that the building permit was issued, of tearing the parapet down before anyone could reach them and tell them the permit was a mistake, and now taking the position that, since it's torn down, replacement constitutes a new investment for them. I don't think that fits the facts.

Plaintiff appears to have attempted to divide the removal and replacement of the parapet into two separate stages. She claims she removed the parapet pursuant to the building permit and is now required to replace the parapet in a new and unconstitutional action. However, the process of removal *and* replacement has been the focus of the controversy from the beginning and cannot be separated based solely on plaintiff's action in removing the parapet. From the record, it appears no reasonable effort was made to meet the conditions imposed on plaintiff by the certificate of approval issued in 1979.

Numerous studies also were submitted relative to the financial effects on plaintiff of the replacement costs of the parapet. The Council chair stated in his oral opinion:

> [T]he city indicated that and presented, what I thought were some pretty good data and analysis, not only on the current site but others around, that the parapet impediment could be replaced at a reasonable cost, that all reasonable relationship to the current value of the building and income producing potential to the building, all which would be a benefit to the current property owner. In

addition, of course, to the district and the city as a whole, which is what this ordinance is all about.

The City Council concluded the estimated cost of re–placement of the parapet did not impose an unnecessary or undue hardship on the plaintiff, considering its market value and income producing potential. The City Council's review applied the appropriate standard required by the *Penn Cent. Transp. Co.* and *Maher v. New Orleans* cases.

There was sufficient evidence to uphold the City Council's decision. No mistake was made. We dismiss plaintiff's issues of vagueness, equal protection, and appearance of fairness as being without merit. The trial court is affirmed.

UTTER, BRACHTENBACH, DORE, PEARSON, ANDERSEN, CALLOW, GOODLOE, and DURHAM, JJ., concur.