**CONTEXT DEVELOPMENT CO. v. DADE COUNTY, et al.**

No. 77-4976.

Circuit Court, Dade County.

February 21, 1978.

Toby Prince Brigham, and Gideon Kanner, California, for the petitioner.

Stuart L. Simon, County Attorney, and Clifford A. Schulman, Assistant County Attorney, for the respondents.

JOHN V. FERGUSON, Circuit Judge.

This matter came on to be heard on the petition for writ of certiorari of Context Development Company, seeking review of an order of the Dade County Environmental Quality Control Board affirming an order to cease and desist issued by the Director, Department of Environmental Resources Management of Metropolitan Dade County. Said cease and desist order prohibited Context from "rockplowing" and preparing for agricultural use approximately 8,100 acres of land until such time as Context prepared and submitted an environmental impact study or such other evidence to show that the proposed activity would not result in violation of the provisions of Chapter 24 of the Dade County Code.

Upon appeal by Context, the Dade County Environmental Quality Control Board held extensive evidentiary hearings in this matter and the record before the court consists of 900 pages of testimony,

15 witnesses, 30 exhibits, including photographs, slides, films, video tapes and other documents. The evidence before the board showed that the company sought to and was in the process of rockplowing certain lands located in Taylor Slough, a wetland area directly adjacent to Everglades National Park. Petitioner, in addition to active rockplowing operations in conjunction with proposed agricultural activities, also sought continuation of this activity and the scarification of a total of 8,100 acres of land in Taylor Slough.

Taylor Slough constitutes a prime watershed area for surface water moving out of its geographic limits and into Everglades National Park, Florida Bay and their related estuarine systems. In addition, the evidence reflected that the slough also acted as a filtration system and water recharge area for the fresh waters of the Biscayne Aquifer, the prime potable water supply source for Dade County's public water supply. Without doubt, the evidence reflects the areas of Taylor Slough that are the subject matter of this cause are inundated for the large portion of the year and are covered by a blue-green algae mat, also known as periphyton. This mat plays an important part in the life cycle of the Everglades National Park environment, the Florida Bay estuarine system and in the continued supply of clean, non-polluted potable water necessary for the population of Dade County. The evidence showed that the mat filters out polluting particulate matter; contributes organic materials to the soil; contributes through the process of photosynthesis, to the aquatic and biotic chains of life in the ecosystem; contributes physical support for many plants and animals within the environment; and acts as a filter for the sun's rays which allows the productivity of the soil to be maintained. The evidence also reflects, without question, that rockplowing activities remove this mat structure and, thereby, eliminate the functioning of one of the basic elements of the entire ecosystem. Moreover, the evidence reflected that agricultural activity would result in the discharge of various fertilizers, nutrients, herbicides, fungicides and other organic and inorganic materials and chemicals into the soil and waters of the slough, both surface and underground.

The evidence and testimony before the board also showed that the surface and underground waters of Taylor Slough and its adjoining areas are integrally related and the movement of the water is out of the confines of petitioner's property with eventual impacts on the ecosystems "downstream" in Everglades National Park, Florida Bay and their related estuarine systems and/or in the Biscayne Aquifer, the prime water supply source for Dade County.

The board had before it competent and substantial evidence to support the proposition that the removal of the blue-green algae

mat and the introduction of organic and inorganic matter and chemical compounds into the waters of the slough would be deleterious in effect and would significantly threaten the multitude of animal, plant, fish and other aquatic life and/or property and would constitute a danger to the human population of Dade County through its potable water supply.

Although a necessary prerequisite to any development in the area, no prior environmental studies were done by Context prior to engaging in rockplowing and farming operations involved in the instant cause and no such studies were contemplated by petitioner at the time of hearing in this matter.

Once scarified, according to the testimony of Context's own expert witness, the land involved would take between decades and centuries to regenerate, if it could regenerate at all.

Based upon the briefs submitted in this case, the record made before the Environmental Quality Control Board and the arguments of counsel, the court makes the following findings —

1. The order of the Environmental Quality Control Board of Metropolitan Dade County affirming the order to cease and desist of the Director of Environmental Resources Management was supported by competent substantial evidence and the court will not substitute its judgment for that of the administrative tribunal. *De Groot v. Sheffield,* 95 So.2d 912 (Fla. 1957).

2. That Sections 24-3(14) and (31) of the Dade County Code are constitutional on their face and as applied to this matter and sufficiently denote the prohibited acts of creating or maintaining a "nuisance" and/or "water pollution" and were a sufficient basis upon which the director and the board could act in issuing and affirming the cease and desist order. *Maher v. City of New Orleans,* 516 F.2d 1051 (5th Cir. 1975); *State v. Dye,* 346 So.2d 538 (Fla. 1977).

3. Review of the mandated environmental impact statement or other evidence is subject to adequate guidelines since the director must be guided by generally accepted concepts and standards of the particular professional discipline concerned, pursuant to Section 24-5(22) of the Code of Metropolitan Dade County.

4. That the action of the Environmental Quality Control Board does not constitute a "taking" of petitioner's property calling for either reversal or compensation since it temporarily prohibits only one specific proposed use of the property until appropriate and necessary environmental studies can be accomplished to assure that the proposed activity will not detrimentally impact on the public of Dade County.

5. Petitioner has no vested right, by deed or zoning, to maintain its land or proposed activity in such a way as to damage or injure the rights of the public through the creation or maintenance of a public nuisance and petitioner is not exempt from the exercise of the police power to abate or prevent these conditions. *Everglades Sugar and Land Co. v. Bryan*, 81 Fla. 75, 87 So. 68 (1921); *State ex rel. Gardner v. Sailboat Key, Inc.*, 295 So.2d 658 (Fla. 3d DCA 1974); *State Plant Board v. Smith*, 110 So.2d 401 (Fla. 1959).

6. Petitioner has not been denied due process or equal protection of the law and full and complete access to the courts has been afforded to petitioner pursuant to Article I, Section 21 of the Florida Constitution. *Scholastic Systems, Inc. v. Le Loup*, 307 So.2d 166 (Fla. 1975).

Based upon the above and foregoing, it is ordered and adjudged that the petition for writ of certiorari sought herein be and the same is hereby denied and this case is hereby dismissed, each party to bear its own costs hereof.